# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 23-12895

—————————————————

HANNIBAL BURESS,
Appellee,

-vs-

LUIS VERNE,
Appellant.

———————————————————————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 20-CV-23078-SCOLA

———————————————————————————————

## INITIAL BRIEF OF APPELLANT
## LUIS VERNE

———————————————————————————————

VICTORIA MÉNDEZ, City Attorney
BRYAN E. CAPDEVILA,
    Assistant City Attorney
Attorneys for LUIS VERNE
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910
Tel.: (305) 416-1800
Fax: (305) 400-5071
Emails: bcapdevila@miamigov.com
       smfernandez@miamigov.com

# CERTIFICATE OF INTERESTED PERSONS

Under Eleventh Circuit Rule 26.1-1, Appellant Luis Verne states the following is an alphabetical list of the trial judge, attorneys, persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal:

a) Bedi, Sheila, Counsel for Appellee;

b) Berkowsky, Danielle, Counsel for Appellee;

c) Buress, Hannibal, Appellee;

d) Campos, Arlene, Counsel for Appellant;

e) Capdevila, Bryan, Counsel for Appellant;

f) City of Miami, Co-Defendant of Appellant;

g) Crutcher, Kara, Counsel for Appellee;

h) Cui, Gregory, Counsel for Appellee;

i) Del Valle, Vanessa, Counsel for Appellee;

j) Eves, Eric, Counsel for Appellant;

k) Fernandez, Brandon, Counsel for Appellant;

l) Goodman, Jonahtan, United States Magistrate Judge;

m) Harrison, Douglas Andrew, Former Counsel for Appellant;

n) Hunnefeld, Henry, Former Counsel for Appellant;

o) Jones, Kevin R., Deputy of Litigation & Appeals for the Office of the City Attorney;

p) Mendez, Victoria, in her official capacity, as the City Attorney for the City of Miami and department head for the Office of the City Attorney;

q) Northwestern Pritzker School of Law & Community Justice Civil Rights Clinic, Employing Entity/Organization of Counsel for Appellee;

r) Pierre, Faudlin, Counsel for Plaintiff-Appellant;

s) Pierre & Simon LLC, Law Firm for Plaintiff-Appellant;

t) Roderick and Solange MacArthur Justice Center, Employing Organization/Entity of Counsel for Appellee;

u) Scola, Robert, United States District Court Judge;

v) Verne, Luis, Appellant;

w) Villegas, Elio, Co-Defendant of Appellant.

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

/s/ *Bryan E. Capdevila*
Bryan E. Capdevila
Assistant City Attorney
Florida Bar No. 119286

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Luis Verne requests oral argument on the issue presented and asserts that oral argument will assist the Court in understanding the facts of the case and the application of the governing law to the facts.

**[THIS SPACE LEFT INTENTIONALLY BLANK]**

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ...............................................C-1

STATEMENT REGARDING ORAL ARGUMENT ........................................ i

TABLE OF CONTENTS ................................................................... ii

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF JURISDICTION ....................................................1

STATEMENT OF THE ISSUES ON APPEAL....................................2

STATEMENT OF THE CASE................................................................2

   *I. The Facts* ............................................................................2

   *II. The History*................................................................................6

SUMMARY OF THE ARGUMENT ....................................................9

ARGUMENT .................................................................................10

  I.   THE DISTRICT COURT ERRED BY DENYING VERNE QUALIFIED
     IMMUNITY AS TO THE FEDERAL CLAIMS BROUGHT AGAINST
     HIM. ......................................................................................10

     A. False Arrest................................................................................11

     B. Retaliation ...............................................................................40

  II.   THE DISTRICT COURT ERRED BY DENYING LUIS VERNE
     STATE-LAW IMMUNITY AS TO THE STATE-LAW CLAIMS BROUGHT
     AGAINST HIM.................................................................................46

**CONCLUSION**..................................................................................48

**CERTIFICATE OF COMPLIANCE**................................................49

**CERTIFICATE OF SERVICE**............................................................49

## TABLE OF AUTHORITIES

*Cases*

*Baysa v. Gualtieri,*

   786 F. App'x 941 (11th Cir. 2019) ..................................................11, 16

*Bell v. Sheriff of Broward Cty.,*

   6 F.4th 1374 (11th Cir. 2021) .......................................................... 40

*Bennett v. Hendrix,*

   423 F.3d 1247 (11th Cir. 2005) ....................................................... 40

*Bias v. State,*

   118 So. 2d 63 (Fla. 2d DCA 1960)................................................... 17

*Brown v. Ent. Merchants Ass'n,*

   564 U.S. 786 (2011) ......................................................................... 40

*Bryant v. Jones,*

   575 F.3d 1281 (11th Cir. 2009) .......................................................... 1

*C.L.B. v. State,*

   689 So. 2d 1171 (Fla. 2d DCA 1997)................................................ 23

*C.W. v. State*,

    76 So. 3d 1093 (Fla. 3d DCA 2011)...................................................................... 27

*Case v. Eslinger*,

    555 F.3d 1317 (11th Cir. 2009) ........................................................................... 12

*Craig v. Singletary*,

    127 F.3d 1030 (11th Cir. 1997) ...........................................................................11

*Epstein v. Toys-R-Us Delaware, Inc.*,

    277 F. Supp. 2d 1266 (S.D. Fla. 2003)................................................................. 26

*Gold v. City of Miami*,

    121 F.3d 1442 (11th Cir. 1997) ..................................................................... 24, 25

*Gonzalez-Torres v. Buswell*,

    2014 WL 1272754 (M.D. Fla. Mar. 27, 2014)............................................... 37, 38

*Grider v. City of Auburn, Ala.*,

    618 F.3d 1240 (11th Cir. 2010) ........................................................................... 15

*Holloman ex rel. Holloman v. Harland*,

    370 F.3d 1252 (11th Cir. 2004) ........................................................................... 36

*Jones v. Michael*,

    656 F. App'x 923 (11th Cir. 2016) ...................................................................... 35

*Khoury v. Miami-Dae Cnty. Sch. Bd.*,

    4 F. 4th 1118 (11th Cir. 2021) ....................................................................... 14, 15

*Logan v. Smith*,

    439 F. App'x 798 (11th Cir. 2011) ....................................................... 28

*Lujan v. Defs. of Wildlife*,

    504 U.S. 555 (1992) ........................................................................ 48

*Marx v. Gumbinner*,

    905 F.2d 1503 (11th Cir. 1990) .............................................................11

*Merricks v. Adkisson*,

    785 F.3d 553 (11th Cir. 2015) ........................................................... 14

*Miller v. State*,

    667 So. 2d 325 (Fla. 1st DCA 1995) ................................................... 25

*Mitchell v. Forsyth*,

    472 U.S. 511 (1985) ......................................................................... 1

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

    429 U.S. 274 (1977) ........................................................................ 44

*Mullenix v. Luna*,

    577 U.S. 7 (2015) .............................................................. 10, 18, 38

*N.H. v. State*,

    890 So. 2d 514 (Fla. 3d DCA 2005) ............................................ 26, 31

*Nell v. Sate*,

    277 So. 2d 1 (Fla. 1973) ................................................................... 13

*Nieves v. Bartlett*,

    139 S. Ct. 1715 (2019) ........................................................ 41, 42, 43, 44

*O'Donnell v. Derrig*,

    346 F. App'x. 385 (11th Cir. 2009) ........................................................ 9

*Olson v. Stewart*,

    737 F. App'x 478 (11th Cir. 2018) ........................................................ 23

*Ortega v. Christian*,

    85 F.3d 1521 (11th Cir. 1996) ........................................................11

*P.B. v. State*,

    95 So. 3d 944 (Fla. 3d DCA 2012) ........................................................ 31

*Perez v. Suszczynski*,

    809 F.3d 1213 (11th Cir. 2016) ........................................................ 1

*Pinto v. Rambosk*,

    2021 WL 3406253 (M.D. Fla. Aug. 4, 2021)................................................ 34, 35

*Post v. City of Fort Lauderdale*,

    7 F.3d 1552 (11th Cir. 1993) ........................................................ 33, 34

*Pourmoghani–Esfahani v. Gee*,

    625 F.3d 1313 (11th Cir. 2010) ........................................................ 28, 33

*Pruitt v. Cote*,

    2013 WL 4700185 (M.D. Fla. 2013) ........................................................ 27

*Raines v. State*,

    65 So. 2d 558 (Fla. 1953) ............................................................. 13, 14

*Redd v. City of Enterprise*,

    140 F.3d 1378 (11th Cir. 1998) ........................................... 41, 42, 43, 45

*Royster v. State*,

    643 So. 2d 61 (Fla. 1st DCA 1994) ............................................... 22, 23

*Savage v. State*,

    494 So. 2d 274 (Fla. 2d DCA 1986) .................................................... 35

*State v. Castillo*,

    877 So. 2d 690 (Fla. 2004) ................................................................ 19

*State v. Cheeks*,

    294 So. 3d 934 (Fla. 4th DCA 2020) .................................................. 31

*State v. Gonzalez*,

    528 So. 2d 1356 (Fla. 3d DCA 1988) ................................................. 19

*State v. Lopez*,

    522 So. 2d 997 (Fla. 3d DCA 1988) .............................................. 14, 19

*State v. Saad*,

    429 So. 2d 757 (Fla.3d DCA 1983) ......................................... 14, 19, 20

*Tillis on behalf of Wuenschel v. Brown*,

    12 F.4th 1291 (11th Cir. 2021) ................................................... 1, 8, 9

*Tinker v. Beasley,*

429 F.3d 1324, 1326 (11th Cir. 2005) ............................................................. 30, 33

*United States v. Arvizu,*

534 U.S. 266 (2002) ...................................................................... 32, 38

*United States v. Burke,*

2022 WL 1970189 (N.D. Ill. June 6, 2022) ............................................. 43

*United States v. Kapperman,*

764 F.2d 786 (11th Cir. 1985) ....................................................... 31

*United States v. Lindsey,*

482 F.3d 1285 (11th Cir. 2007) ..................................................... 32

*United States v. Marchetti,*

466 F.2d 1309 (4th Cir. 1972) ...................................................... 43

*Von Stein v. Brescher,*

904 F.2d 572 (11th Cir. 1990) ...................................................... 15

*Waldron v. Spicher,*

954 F.3d 1297 (11th Cir. 2020) ........................................... 18, 20, 37, 38

*Williamson v. Mills,*

65 F.3d 155 (11th Cir. 1995) .......................................................11

*Wiltjer v. State,*

756 So. 2d 1063 (Fla. 4th DCA 2000) ........................................... 25

*Wood v. Kesler*,

   323 F.3d 872 (11th Cir. 2003) ................................................................ 42

**Statutes**

28 U.S.C. § 1291 ........................................................................................... 1

28 U.S.C. § 1332(a)(1) ................................................................................. 1

Fla. Stat. § 838.015 ................................................................................ 9, 12

Fla. Stat. § 838.016 ........................................................................... 9, 12, 13

Fla. Stat. § 843.02 ......................................................................... 9, 26, 27, 31

Fla. Stat. § 856.011 ................................................................................ 9, 22

Fla. Stat. § 877.03 .................................................................................. 9, 22

Fla. Stat. § 838.015(1) ............................................................................... 19

Fla. Stat. § 877.03 ..................................................................................... 22

U.S. Const. amend. I .................................................................................. 40

**Rules**

11th Cir. R. 32-4 ........................................................................................ 49

Eleventh Circuit Rule 26.1-1 ........................................................................ 1

Fed. R. App. P. 4(a) ..................................................................................... 1

Fed. R. App. P. 32(a)(5) .............................................................................. 49

Fed. R. App. P. 32(a)(7)(B) ........................................................................ 49

Fed. R. App. P. 32(f) ................................................................................... 49

Fed. R. Civ. P. 56(e) ............................................................ 29

Fed. R .Civ. P. 56(a), (e)..................................................... 33

## **STATEMENT OF JURISDICTION**

This is a civil appeal from a non-final judgment of the United States District Court, Southern District of Florida, which denied Luis Verne's motion for summary judgment on qualified immunity and state law immunity grounds. [ECF No. 165].[1] This appeal is timely because the notice of appeal was filed on September 1, 2023 following entry of the district court's August 30, 2023 order. *See* Fed. R. App. P. 4(a).

The district court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Jurisdiction is proper here under 28 U.S.C. § 1291 and the collateral order doctrine. *See Mitchell v. Forsyth*, 472 U.S. 511, 527–28 (1985); *Bryant v. Jones*, 575 F.3d 1281, 1288 n.2 (11th Cir. 2009). Further, because this appeal presents issues of law that may be considered on an interlocutory basis (*i.e.*, state law immunity on state law claims and qualified immunity on federal claims), jurisdiction is proper. *See Tillis on behalf of Wuenschel v. Brown*, 12 F.4th 1291, 1296–97 (11th Cir. 2021); *Perez v. Suszczynski*, 809 F.3d 1213, 1216–17 (11th Cir. 2016).

---

[1] In this brief, record citations that are available on CM/ECF are cited as "[ECF No. xx] at yy" such that "xx" shall refer to the docket entry number where the cited document can be located within the docket of the proceedings below and "yy" represents the pincite location where the cited material can be located within the aforementioned document. Otherwise, where a paragraph number is used instead of a pincite, the paragraph number will appear within the brackets.

## STATEMENT OF THE ISSUES ON APPEAL

The issues on appeal are (1) whether the district court erred by denying Luis Verne qualified immunity as to the federal claims brought against him and (2) whether the district court erred by denying Luis Verne state-law immunity as to the state-law claims brought against him.

## STATEMENT OF THE CASE

### I. The Facts

Luis Verne ("Verne") is a law enforcement officer employed by the City of Miami Police Department who acted under the color of law and within the scope of his employment with the City of Miami ("City") at all material times. [ECF No. 120 at ¶ 1]; [ECF No. 137 at ¶ 1]. Buress is a Chicago-based comedian who visited Miami for the annual Art Basel festival ("Art Basel") in the Wynwood Art District during the weekend of December 9, 2017. [ECF No. 120 at ¶¶ 2-4].

On the night of Friday, December 9, 2017, Officer Verne was assigned to the Overtown Problem Solving Team, but due to Art Basel, was assigned to the Wynwood area to direct traffic for pedestrians. [ECF No. 120 at ¶ 5; ECF No. 137 at ¶ 5]. Officer Verne was stationed at a post near a stop sign just outside and adjacent to a gated venue located on the southwest corner of NW 20th Terrace and NW 2nd Avenue. [ECF No. 120 at ¶ 6]. In the afternoon of December 9, 2017, Buress arrived at Gramps Bar in Wynwood where he spent a "substantial time" drinking alcohol

before "floating" to other places in Wynwood. [ECF No. 120 at ¶¶ 8-9]. At some point later that night, Buress's phone died, and walked southbound on NW 2nd Avenue in the direction Officer Verne's post located on the corner of NW 2nd Avenue and NW 20th Terrace to find a ride back to his hotel. [ECF No. 120 at ¶ 10].

Buress's first encounter with Officer Verne occurred when Buress was on the street adjacent to Verne's post. [ECF No. 120 at ¶ 11]. After noticing Officer Verne at his post, Buress walked up to Officer Verne and said "call me an Uber and I'll give you $20." [ECF No. 120 at ¶¶ 12-13]; [ECF No. 137 at ¶ 12]. Verne responded "No," and then explained to Buress he could get a taxi on North Miami Avenue and asked Buress to get out of the street. [ECF No. 120 at ¶ 14]. Buress and Verne then engaged in a series of verbal profane exchanges where Verne directed Buress to leave the area and not to enter the gated venue adjacent to Verne's post. [ECF No. 120 at ¶¶ 14-18]. Buress proceeded to enter the venue, followed by Verne following Buress into the venue and directing him to leave the venue because, to Verne, Buress was "visibly drunk" and "could barely walk," and did not want anything to escalate with Buress within the venue. [ECF No. 120 at ¶¶ 19]. At some point, Buress decided to leave the venue while Verne followed Buress to the exit and turned on his Body Worn Camera ("BWC") because, as Verne testified, "other patrons from the bar were noticing the exchange." [ECF No. 120 at ¶¶ 19-21].

When Verne reached the venue's exit and activated his BWC, he believed a crowd of individuals were standing behind him, observing his encounter with Buress. [ECF No. 120 at ¶ 22]. The first 30-seconds of Verne's BWC shows Buress continuing his exchange with Verne while stepping back and forth toward Verne, who testified that he had ordered Buress to leave the area. [ECF No. 120 at ¶ 23]. Verne's BWC then captures Buress laughing and asking Verne to "put the camera on" prior to walking back around the corner and toward Verne to speak into Verne's BWC. [ECF No. 120 at ¶ 24]. Verne's BWC shows Buress again stepping closer to Verne as he tells Buress to "get out of here" two more times prior to him instructing Buress—who continued to engage with Verne—to put his hands behind his back. [ECF No. 120 at ¶ 25; ECF No. 137 at ¶ 25]. As Verne ordered Buress to put his hands behind his back, Buress took ten (10) steps in retreat from Verne stating, "for what?" and "what's the charge?" multiple times as Verne attempted to handcuff him. [ECF No. 120 at ¶ 26; ECF No. 137 at ¶ 26]. As Verne attempts to handcuff Buress, the BWC captures a young male's voice that is heard stating "what [sic] he do?" [ECF No. 120 at ¶¶ 23-26; *Verne BWC* at ECF No. 119-5 at T02:33:00Z–T02:33:08]. Once Verne placed one handcuff on Buress's right hand, the BWC shows Buress using his left hand to engage with three (3) individuals—including an individual in a black long-sleeve shirt who was not present 20 seconds earlier; these individuals approached Buress and Verne. [ECF No. 120 at ¶¶ 23-28; *Verne BWC* at ECF No.

119-5 at T02:32:55Z–T02:33:30; ECF No. 137 at ¶ 27]. The BWC corroborates Verne's testimony and belief that the three (3) individuals depicted in the BWC were the same individuals that followed Verne from the venue's exit and around the corner as he attempted to handcuff Buress. [ECF No. 120 at ¶¶ 23-28; *Verne BWC* at ECF No. 119-5 at T02:32:55Z–T02:33:30; ECF No. 137 at ¶ 27].

Eventually, Verne secured Buress in handcuffs; at which point, Officer Villegas arrived on scene to provide backup for Verne, as the two officers walked Buress across the street to place him into Verne's patrol car while the same three (3) individuals shown in Verne's BWC followed them. [ECF No. 120 at ¶¶ 29-31]. Verne attempted to place Buress into the patrol car, but Buress refused and repeated his demands for the basis of what he called an arrest. [ECF No. 120 at ¶ 32]. Officer Villegas explained to Buress that he was being "detained," and after repeating demands for the basis of his detainment, Verne explained for trespassing and disorderly intoxication. [ECF No. 120 at ¶ 32; *Verne BWC* at ECF No. 119-5 at T02:36:55Z–T02:37:17]. Verne then walks to the other side of his patrol vehicle and pulls Buress into the back seat. [ECF No. 120 at ¶ 34].

As the "majority of venues" in the City, including the Wynwood area, have affidavits authorizing City Police Officers to find a suspect trespassed without the physical presence of the property owner, Officer Verne believed the Wynwood venue located near his post had one as well. [ECF No. 120 at ¶¶ 37-39]. Ultimately, upon

realizing he was incorrect about that particular venue, he did not charge Buress with trespassing in the arrest affidavit. [ECF No. 120 at ¶¶ 37-39]. After the arrest, Verne had a telephone conversation with the Miami-Dade State Attorney's Office, and its factual determinations within the memorandum was consistent with what Verne wrote in his arrest affidavit. [ECF No. 120 at ¶ 40; ECF No. 137 at ¶ 40; ECF Nos. 136-2 and 136-3]. Instead, the Miami-Dade County State Attorney's Office dropped all charges because, although the element of intoxication was "satisfied," its office determined that the element regarding a public disturbance for disorderly intoxication was "not satisfied" under a reasonable doubt standard. [ECF No. 120 at ¶ 40; ECF No. 137 at ¶ 40; ECF No. 136-5 at 2-3]. Other than the phone call with the SAO, Verne had no other contact or action with the SAO. [ECF No. 120 at ¶ 40; ECF No. 137 at ¶ 40].

## II. The History

Buress brought his action against Officer Luis Verne, Officer Elio Villegas, and the City of Miami in July 2020, and he amended his complaint in February 2021. [ECF Nos. 1, 26]. The defendants jointly filed a motion to dismiss the amended complaint, wherein Villegas invoked qualified immunity. [ECF No. 27]. The district court denied the motion to dismiss and, thus, rejected Villegas's invocation of qualified immunity. [ECF No. 35]. An interlocutory appeal on Villegas's qualified

immunity defense was taken; however, this Court affirmed the district court's denial of qualified immunity for Villegas at the dismissal stage. [ECF No. 78].

The defendants filed two motions for summary judgment: one for the individual officers and one for the City of Miami. [ECF Nos. 121, 124]. In his motion, Verne argued that he was entitled to qualified immunity as to the federal claims against him. [ECF No. 121]. He also argued that he was entitled to state law immunity as to the state-law claims brought against him. *Id.* As to both sets of claims, the issue of actual probable cause was case dispositive. *Id.* Separately filed statements of material facts were filed, [ECF Nos.120, 123], as well as notices of exhibits. [ECF Nos. 119, 122]. Importantly, Verne's bodyworn camera footage was filed conventionally with the district court. [ECF No. 117]; *see also* [ECF No. 119-5] (showing placeholder exhibit cover sheet for conventionally filed exhibit).

The district court granted in part and denied in part the officers' motions for summary judgment and denied the City of Miami's motion for summary judgment. [ECF No. 165]. Villegas prevailed at summary judgment. *Id.* Buress took no appeal on the district court's grant of summary judgment to Villegas, and the City of Miami has not brought an interlocutory appeal either.

As for Verne, the district denied his motion for summary judgment thereby denying his entitlement to qualified immunity as to the federal claims against him and state-law immunity as to the state-law claims brought against him. *Id.*

The district court, and the parties agreed, that Verne acted within his discretionary authority for qualified immunity purposes. [ECF No. 165] at 5. And the district court found the parties in agreement that Buress was intoxicated. *Id.* at 8.

Almost entirely, the district court's decision turned heavily on its finding that there were genuine issues of material fact as to whether there was actual probable cause to arrest Buress based on facts that the district court determined were in dispute. *See generally id.* at 5–15. Some of the facts that the district court found were controverted by video evidence and even by the parties' own agreement as to what appears on the video. Those factual inferences not only had an effect on the district court's assessment of actual probable cause but also arguable probable cause for the purposes of evaluating Verne's entitlement to qualified immunity on the federal claims and as to his entitlement to state-law immunity on the state-law claims. For brevity, though, Verne addresses the relevant portions of the district court's order within the "Argument" section below. Verne does this for this appeal due to the various issues he raises.

## IV. Standard of Review

The grant or denial of qualified immunity and state-law immunity at summary judgment is reviewed de novo with all facts construed in the light most favorable to the nonmoving party. *Tillis on behalf of Wuenschel v. Brown*, 12 F.4th 1291, 1296

(11th Cir. 2021). Accordingly, because Officer Verne challenges the district court's denial of state-law immunity and qualified immunity, de novo applies. *See id.*

## SUMMARY OF THE ARGUMENT

The district court erred in denying Verne's summary judgment motion. Verne's actions relative to the alleged false arrest were supported by actual and arguable probable cause for multiple crimes. For this appeal, Verne briefs the actual probable cause for Bribery (Fla. Stat. § 838.015), Unlawful Compensation or Reward for Official Behavior (Fla. Stat. § 838.016), Disorderly Intoxication and Disorderly Conduct (Fla. Stat. §§ 856.011, 877.03), and Resisting an Officer Without Violence (Fla. Stat. § 843.02). As a result, the existence of probable cause entitled Verne to summary judgment as to Buress's § 1983 claims for False Arrest (Count I), Retaliatory Arrest (Count II), Failure to Intervene (Count III), and Florida common law claims of malicious prosecution (Count V) and false arrest (Count VI). *See O'Donnell v. Derrig*, 346 F. App'x. 385, 388 (11th Cir. 2009) (affirming summary judgment in favor of defendant on Section 1983 unlawful seizure claim where the arrest was supported by probable cause).

More to the point, though, the existence of *arguable* probable cause for those offenses entitled Verne to qualified immunity as to Buress's federal claims against him (Counts I–III) even if Verne was unable to show actual probable cause existed. *See*, *infra*. In addition, and for similar reasons, Verne was entitled to state-law

immunity, as the district court erred in finding he acted with malice, bad faith, or with wanton disregard to Buress's rights. Thus, summary judgment was due as to the state-law claims against Verne (Counts V–VI). Lastly, a review of the record demonstrates the district court's conclusions of law appear were the result of unwarranted factual inferences, which was inconsistent with summary judgment standards, because such inferences were controverted by video evidence and factual points on which the parties agreed.

## ARGUMENT

### I. THE DISTRICT COURT ERRED BY DENYING VERNE QUALIFIED IMMUNITY AS TO THE FEDERAL CLAIMS BROUGHT AGAINST HIM.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). Thus, clearly established law is not met by reliance on broad general propositions but with specificity, especially in the Fourth Amendment context, because of the difficulties officers may face when determining the relevant legal doctrines. *Id.*

## A. False Arrest

"The Fourth Amendment permits warrantless arrests if made with probable cause." *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995). For this reason, "[t]he existence of probable cause . . . is an absolute bar to a section 1983 action for false arrest." *Marx v. Gumbinner*, 905 F.2d 1503, 1505–06 (11th Cir. 1990). Probable cause to arrest a suspect exists "if the facts and circumstances within the officer's knowledge, of which [they have] reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (cleaned up). Courts must evaluate probable cause with "a common sense view to the realities of normal life" and "without regard to the subjective beliefs of [the] law enforcement officers, whatever those beliefs may have been. *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997).

Of course, an officer can have probable cause to believe a crime is afoot and later be wrong. *See Baysa v. Gualtieri*, 786 F. App'x 941, 944 (11th Cir. 2019) (explaining probable cause "does not require an actual showing of criminal activity" or even "overwhelmingly convincing evidence" of criminal activity (cleaned up)). The bar for showing probable cause is also not too difficult. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy

information." (cleaned up)). This makes sense because "even seemingly innocent activity can be the basis for probable cause. *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (cleaned up).

### i. Bribery and Unlawful Compensation

In Florida, the crime of Bribery is a Second-Degree Felony codified under Section 838.015, Florida Statutes. It states:

> (1) "Bribery" means to knowingly and intentionally give, offer, or promise to any public servant, or, if a public servant, to knowingly and intentionally request, solicit, accept, or agree to accept for himself or herself or another, any pecuniary or other benefit not authorized by law with an intent or purpose to influence the performance of any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of a public servant, in violation of a public duty, or in performance of a public duty.

Fla. Stat. § 838.015. Likewise, the crime of Unlawful Compensation or Reward for Official Behavior is a Second-Degree Felony codified under Section 838.016, Florida Statutes. That statute states:

> (1) It is unlawful for any person to knowingly and intentionally give, offer, or promise to any public servant, or, if a public servant, to knowingly and intentionally request, solicit, accept, or agree to accept, any pecuniary or other benefit not authorized by law, for the past, present, or future performance, nonperformance, or violation of any act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty. This section does not preclude a public servant from

> accepting rewards for services performed in apprehending
> any criminal.

Fla. Stat. § 838.016.

The parties do not dispute the relevant facts, and the district court acknowledged this. [ECF No. 165] at 7. The parties only dispute their legal significance. *See generally id.*

The district court found that "Officer Verne had no arguable or actual probable cause to arrest Buress for bribery, unlawful compensation or reward for official behavior because Buress's offer did not implicate any official act." *Id.* at 7.[2] In support of its position the district court cited a 1953 and 1973 Florida Supreme Court decision for the proposition that those statutes do not apply to every act of a public official while on duty. [ECF No. 165] at 7 (citing *Raines v. State*, 65 So. 2d 558, 560 (Fla. 1953) and *Nell v. Sate*, 277 So. 2d 1, 5 (Fla. 1973)).

The district court's reliance on *Raines* and *Nell* in relation to its qualified immunity analysis does not comport with the standards set forth by the U.S. Supreme Court. The 1953 Florida Supreme Court in *Raines* had no occasion to address the unlawful compensation statute because that statute had not yet existed until 1974. *See* Fla. Stat. § 838.016 (1974). Likewise, the 1973 decision in *Nell* had not yet addressed the non-existent unlawful compensation statue. Accordingly, the Court's

---

[2] Again, the district court found, and the parties do not dispute, that Verne was acting within his discretionary duty. *Id.* at 5.

reliance on *Raines* and *Nell*, as it relates to the unlawful compensation statute, was, erroneous. *See Merricks v. Adkisson*, 785 F.3d 553, 559 (11th Cir. 2015) ("[R]ecognizing that the clearly established law question turns on the law at the time of the incident, the district court must consider the law in light of the specific context of the case, not as a broad general proposition.").

As for bribery, the Florida Third District Court of Appeal ("Third DCA") explained that "the bribery statute prohibits *any payment intended to influence* the performance of *any* act by a public servant." *State v. Lopez*, 522 So. 2d 997, 998 (Fla. 3d DCA 1988). Under that precedent, it makes no difference whether the official is legally bound to do so or not. *See id.* ("The statute is violated even when a person pays for the doing of an act that the public servant is legally bound to do."); *see also State v. Saad*, 429 So. 2d 757, 758 (Fla.3d DCA 1983) (same).

The district court, it seems, placed the burden of showing clearly established law related to unlawful compensation and bribery upon Verne when it was Buress's burden to rebut with clearly established law. True, the Court stated the rule that the burden of showing clearly established law rests on the plaintiff. [ECF No. 165] at 5 (citing *Khoury v. Miami-Dae Cnty. Sch. Bd.*, 4 F. 4th 1118, 1125–26 (11th Cir. 2021)). But, in application, the district court confronted Verne's arguments for why clearly established law was *not* violated and never seemed to address Buress's contention that it was. For example, the district court said "Verne does not make a

serious attempt to argue that calling an Uber is within the scope of a police officer's official duties, instead attempting to establish that the bribery and unlawful compensation or reward statutes apply to offers to a public official for *any* act." [ECF No. 165 at 7]. For this reason, as well, the district court's qualified immunity analysis regarding bribery and unlawful compensation deprived Verne of the proper standard of review. *See Khoury*, 4 F. 4th at 1125–26 (explaining the burden shifts onto the plaintiff to show clearly established law after the official shows they acted within their discretionary authority).

Similarly, the district court's application of probable cause and arguable probable cause subjected Verne to a higher standard than what the U.S. Supreme Court contemplates in cases like this. This is because, for *arguable* probable cause to be present for qualified immunity purposes, an officer need not prove every element of a crime. *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("Showing arguable probable cause does not, however, require proving every element of a crime."). Indeed, "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (cleaned up). Nor does actual probable cause require perfect satisfaction of each element prior to making an arrest, as an officer can have probable cause to believe a crime is afoot and later be wrong.

*See Baysa v. Gualtieri*, 786 F. App'x 941, 944 (11th Cir. 2019) (explaining probable cause "does not require an actual showing of criminal activity" or even "overwhelmingly convincing evidence" of criminal activity) (cleaned up).

Here, all parties agree that Verne was on duty and acting within his discretionary authority at all times. There is also no dispute that Verne was wearing a police uniform during the events in question. A reasonable officer in Verne's shoes, therefore, could have inferred that money was being offered (i.e., $20) to do a task that they are not authorized to perform *while* acting as a police officer (i.e., take time away from one's official duties to call an Uber for a civilian). Thus, even if—as the Court found below—that both bribery and unlawful compensation statutes require an official act, the monetary offer was made to an on-duty police officer and acceptance would have resulted in neglect or abandonment of Verne's duties during a traffic detail.

In this regard, the district court's finding that the monetary sum was not for official conduct appears to be flawed. And, indeed, the Miami Police Department's Departmental Orders contemplates that an official should not accept money while acting as a police officer or else it is viewed as a bribe. *See* D.O. 11.6.17.20 (explaining an officer cannot accept "money, or other valuables, while acting in the

capacity of a police officer, either in on or off duty").[3] Nor is leaving one's "post without permission" or "[n]eglect or inattention to duty" permitted. *See* D.O. 11.6.17.14 & 11.6.17.9.[4] A reasonable officer would be aware of the factual and legal circumstances and, therefore, might interpret with—actual and arguable probable cause—that the monetary offer amounted to a bribe or solicitation for unlawful compensation under the circumstances.

It seems the district court factored in the nominal monetary amount as a reason for why a reasonable officer would not believe a bribe or solicitation of unlawful compensation was made to them. But Florida's courts have upheld bribery convictions for similar monetary amounts. *See Bias v. State*, 118 So. 2d 63, 64 (Fla. 2d 1960) ($25 dollars per supposed violator). And the applicable statutory language and departmental orders establish no monetary amount that is permissible. To the extent that was a factor in the district court's determination, Verne submits that, too, was erroneous.

Lastly, and more importantly, the district court did not comport with the U.S. Supreme Court's instruction as to what constitutes clearly established law for qualified immunity purposes. This is because, if there is *any* debate as to what the

---

[3] For ease of reference, the complete departmental orders are available at the following link. *See* MIAMI POLICE DEPARTMENT, *Departmental Orders*, available at https://www.miami-police.org/DeptOrders/MPD_Departmental_Orders.pdf (last accessed Nov. 13, 2023).

[4] *See*, *supra*, note 3.

law requires, clearly established law for qualified immunity purposes has not been shown. *See Mullenix v. Luna*, 577 U.S. 7, 12 (2015) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Again, the district court determined that the monetary amount offered was not in exchange for official conduct as the sole reason for the bribery and unlawful compensation statutes' inapplicability, and it appears to have placed the burden of showing clearly established law on Verne. There is no case in Florida law that excuses officials from accepting monetary amounts to engage in non-official conduct when doing so would mean they have neglected or otherwise abandoned their official duties.

As a result, the district court's order below appears to be the first case interpreting Florida's bribery and unlawful compensation statutes in this fashion. Of course, because it is the first to make this construction of Florida's bribery and unlawful compensation statutes, regardless of whether it was an erroneous interpretation or not, the law was not clearly established. *See Waldron v. Spicher*, 954 F.3d 1297, 1304–05 (11th Cir. 2020) (explaining that citing precedent requires that "materially similar cases from the United States Supreme Court, this Circuit, and/or the highest court of the relevant state can clearly establish the law.").

Worth emphasizing, Verne identified cases that explained that offering money to a public servant in exchange for any act, regardless of whether the official is required to do so or not, can result in bribery and unlawful compensation. *See State v. Castillo*, 877 So. 2d 690, 694 (Fla. 2004) ("Such language implies that, although evidence of an agreement is sufficient to prove a violation—the statute also prohibits *agreeing* to accept a benefit—it is not required [because solicitation of a benefit not authorized by law is prohibited]."); *State v. Gonzalez*, 528 So. 2d 1356, 1356 (Fla. 3d DCA 1988) ("The bribery statute, section 838.015(1), Florida Statutes (1985), prohibits any payment intended to influence performance of any act by a public servant, even if payment is for doing an act the public servant is legally bound to do"); *State v. Lopez*, 522 So. 2d 997, 998 (Fla. 3d DCA 1988) ("The bribery statute prohibits any payment intended to influence the performance of any act by a public servant.").

And, in *Lopez*, the Florida Third District Court of Appeal explained that it does not matter whether the offeror made demands or requests for "specific, prospective, official conduct." *Lopez*, 522 So. 2d at 999 (internal quotation marks omitted). These statutes have even been found not only to prohibit the influencing of an officials judgment or decision but also "the improper result of such influence." *See State v. Saad*, 429 So. 2d 757, 758 (Fla. 3d DCA 1983).

In other words, even if calling an Uber is not an official act, Verne's acceptance of the offer would have required him to take on the role of a non-officer to the exclusion of any other work duties he should have been taking. Therefore, because of the caselaw stating money for any act by a public official can result in bribery and unlawful compensation, any ambiguity that may have existed between precedent and the statute hurts Buress's showing that clearly established law was violated. *See id.* at 1305 (holding that a novel issue must be established with obvious clarity such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted" (cleaned up)).

True, Verne could have called an Uber for the individual, but not in exchange for money. And that's what makes the difference here. And the lack of caselaw directly answering whether payment for a non-official act that would result in an official's derelict of duties could not lead every reasonable official to conclude the arrest was unlawful. *See id.* Nor is the at-issue conduct so obviously prohibited under the constitution or Florida law. *See id.*

Buress submitted examples, which he argued were analogous to the case at hand (e.g., government co-workers running coffee errands for each other), in order to demonstrate that there is no unlawful compensation for receiving money while on the job. But, in Verne's view, a more analogous example to the facts at hand would

be a civilian offering an officer, who is acting in his capacity as an officer, money to take a video because that solicitation—if accepted—would result in the officer neglecting or abandoning their post for money.

In any event, because the parties must quibble as to whether accepting money that directly affects official duties versus indirectly affecting them by virtue of offering money to an on duty police officer as the distinguishing factor, it demonstrates that a reasonable officer would have had actual probable cause under the circumstances. Or, at the very least, they would have had arguable probable cause. This is because an officer need not prove every element in order to have arguable probable cause to make an arrest.

Again, Buress's argument that an official act needed to be at issue ignored that an offered-for unofficial act would have meant disregarding the official duties of a police officer. Accordingly, Verne is entitled to qualified immunity because a reasonable officer could have inferred that Buress arguably committed bribery or unlawful compensation by virtue of offering money to an on-duty police officer. Further, for the reasons previously stated, he would have actual probable cause as well.

### ii. Disorderly Intoxication/Disorderly Conduct

"Under the plain language of the statute, 'disorderly intoxication' is defined and proscribed in *two distinct* ways: (1) where the person is intoxicated and

endangers the safety of another person or property; and (2) where the person is intoxicated or drinks alcohol in a public place or on a public conveyance and causes a public disturbance." *Royster v. State*, 643 So. 2d 61, 64 (Fla. 1st DCA 1994) (citing Fla. Stat. § 856.011) (emphasis added). Similarly, in Florida, the crime of Disorderly Conduct is a Second-Degree Misdemeanor codified under Section 877.03, Florida Statutes, it states: "Whoever commits such acts as are of a nature to corrupt the public morals, or outage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting, or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty" of the crime. Fla. Stat. § 877.03.

At the district court level, "[b]oth sides agree[d] that Buress was intoxicated and insulted Officer Verne, including with profanities." [ECF No. 165] at 5. And there is no real dispute that Verne acted within his discretionary authority when effectuating an arrest for qualified immunity purposes. *Id.* The district court, however, found the second component of each method of showing disorderly intoxication was not satisfied by actual or arguable probable cause. *Id.* at 8.

In denying summary judgment, the district court chiefly relied on the well-settled rule that "an individual's speech without more" cannot form the basis for disorderly intoxication. *Id.* at 8. But the district court's analysis seems to reflect an undue emphasis on whether a defendant inflicted a physical injury or created a

present danger of bodily harm to others. *Id.* The district court's analysis, it's true, acknowledges that creating a breach of the peace or other public disturbance is sufficient. *Id.* But, in application, the district court never addressed how the factual record has any dispute as to whether Buress created a breach of the peace or started a public disturbance while intoxicated. *Id.* Because of this omission, it appears the district court did not consider the two distinct methods of showing disorderly intoxication. *See generally Royster*, 643 So. 2d at 64 (identifying the two distinct methodologies).

Of course, probable cause for disorderly conduct cannot be based on mere words except in very limited circumstances. *Olson v. Stewart*, 737 F. App'x 478, 482 (11th Cir. 2018). And Verne acknowledges that those limited circumstances are not applicable to this case. *See id.* But when there has been a physical obstruction in an officer's ability to make an arrest, it may amount to the kind of public disturbance necessary for disorderly conduct at the probable cause level. *See id.* (citing *C.L.B. v. State*, 689 So. 2d 1171 (Fla. 2d DCA 1997)).

The video shows that Officer Verne instructed Buress to put his hands behind his back, but Buress took 10 steps back from Officer Verne in defiance of a lawful order, moving his hands away. *Verne BWC* at T02:33:00Z. A crowd is present because Verne's BWC captures a young male's voice inquiring of Buress's arrest. [SMF ¶¶ 20–32]; *Verne BWC* at ECF No. 118-7 at T02:33:00Z–T02:33:08]. And it

shows Buress engaging with three (3) individuals, including an individual in a black long-sleeve shirt standing to the right of the two (2) women seen 20 seconds earlier, thereby indisputably showing that those individuals followed closely behind Officer Verne from the venue's exit and around the corner as he escorted Buress outside. [SMF ¶¶ 20–26]; *Verne BWC* at ECF No. 118-7 at T02:32:55Z–T02:33:30]. Verne submits that it was the physical resistance coupled with the profanities—particularly, the tone, demeanor, and other non-verbal conduct employed—as the point where actual or arguable probable cause for the disorderly intoxication charge existed because it was then that a crowd of onlookers had already begun to form.

Although it appears the district court effectively reasoned that conduct causing "three people stopping to record" an incident is not sufficient to cause a public disturbance. *Id.* at 5. There is no caselaw that establishes at what point a group of onlookers escalates into a crowd for public disturbance purposes.

And this makes sense. As this Court has explained, "what constitutes legally proscribed disorderly conduct [under Florida law] is subject to great subjective interpretation of specific facts." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997). Given the "great subjective interpretation" of facts that officers must face when interpreting when conduct amounts to disorderly intoxication and when it is protected speech exercised by an inebriated person, there should be "ample room"

to find an officer reasonably, but mistakenly, could have determined Buress to have committed disorderly conduct. *See id.*

In the proceedings below, the district court did not identify the clearly established law that Buress had identified that permitted the physical resistance to being handcuffed coupled with the profanities and the developing crowd. The Court, of course, relied on case law that identifies the general proscription against arrests based on mere words. [ECF No. 165]. But Verne had identified, and the video corroborates, Buress's physical resistance to detainment and/or non-verbal conduct while inebriated. Because the district court did not identify a similar case, and it cannot be said that all reasonable officers would conclude probable cause was lacking, Buress failed to meet his burden of showing clearly established law in the proceedings below. Accordingly, summary judgment should have issued in Verne's favor because there was no genuine issue of material fact with respect to the actual and arguable probable cause for the disorderly intoxication arrest.

Nor did the district identify the clearly established law that would show no reasonable officer had actual or arguable probable cause for disorderly conduct. Of course, "there must be evidence of something more than loud or profane language or a belligerent attitude" to sustain a disorderly conduct conviction under Florida law, *Miller v. State*, 667 So. 2d 325, 328 (Fla. 1st DCA 1995), such conduct in conjunction with *nonverbal defiance* of lawful orders is enough, *see Wiltjer v. State*,

756 So. 2d 1063, 1066 (Fla. 4th DCA 2000) (relying on belligerent conduct in connection with defiance of a lawful order to leave the premises to affirm disorderly conduct conviction). Indeed, disorderly conduct can be sustained if a suspect "continuously interrupt[s] the police," "attract[s] attention by becoming loud and abusive," and gets "in [an] officer's way" generally. *Epstein v. Toys-R-Us Delaware, Inc.*, 277 F. Supp. 2d 1266, 1272 (S.D. Fla. 2003) (explaining that, under Florida law, loud and abusive conduct coupled with repeatedly interrupting officers and defiance of lawful orders is sufficient for a disorderly conduct charge). As the video shows, and contrary to the district court's unwarranted inferences, Plaintiff was loud, aggressive, and combative as he yelled profanities at Verne causing onlookers to observe their exchange **and** Buress refused to obey Verne's commands throughout the exchange. Accordingly, Verne is entitled to qualified immunity because there is actual or arguable probable cause for both disorderly intoxication or disorderly conduct.

### iii. Resisting an Officer Without Violence

In Florida, the two elements of resisting arrest without violence are: (1) "the officer must be engaged in the lawful execution of a legal duty;" and (2) "the defendant's action, be it by words, conduct or a combination thereof, must constitute obstruction or resistance of that lawful duty." *N.H. v. State*, 890 So. 2d 514, 516–17 (Fla. 3d DCA 2005); Fla. Stat. § 843.02. "**Legal duties within the meaning of**

**section 843.02 include, among others, legally *detaining* someone**." *Pruitt v. Cote*, 2013 WL 4700185, *5 (M.D. Fla. 2013) (emphasis and bolded text added); *see also C.W. v. State*, 76 So. 3d 1093, 1095 (Fla. 3d DCA 2011) (same).

In the district court, Verne argued as follows:

> [A]s shown by Verne's BWC, Plaintiff clearly violated Section 843.02, Florida Statutes, **when [Plaintiff] backed away from Officer Verne and refused to place his hands behind his back in response to a lawful command from Officer Verne and continued to resist when he used his right hand to engage with the three (3) individuals who followed Officer Verne around the corner to witness the arrest after having probable cause arrest—and at least *reasonable suspicion* to investigate—Plaintiff's commission of multiple crimes identified**

[ECF No. 121] at 15 (citing [ECF No. 120] ¶¶ 22-29; *Verne BWC* at [ECF No. 119-5] at T02:32:55Z–T02:33:11]) (bolded text and emphasis added).

The district court's order appears to have misinterpreted Verne's argument in this regard and makes no mention of the conduct that irrefutably appears on Verne's bodyworn camera footage.

Verne addresses each omission in turn and summarizes his conclusions of law as applied to the facts below.

**a. The Factual Omissions**

The district court, as already stated, did not address some of the conduct captured on Verne's bodyworn camera footage, which ultimately resulted in Verne being deprived of qualified immunity.

"In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) (citing *Pourmoghani–Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)). Stated succinctly, "the video's depiction over the opposing party's account of the facts where the video obviously contradicts that version of the facts" controls. *Id.*

Nowhere in the district court's order, however, is there any reference to Buress taking ten (10) steps away from Verne after being instructed to position his hands for handcuffing. Nor is there any reference to Buress engaging with individuals with one hand during the handcuffing process. Likewise, there is no explicit reference to Buress's refusal to be placed into Verne's police vehicle for detention.

Instead, the district court found Buress "allowed himself to be handcuffed" and "[stood] still without requiring restraint" until Officer Villegas arrived to assist "moving [Buress] to the squad car." [ECF No. 165] at 3.

In addition to the stark differences between what appears on video and the district court's findings, the district court's findings also overlooked facts on which

the parties agreed. To illustrate, for the findings of Buress standing still and allowing himself to be handcuffed, the district court cited Buress's statement of material facts in opposition to Verne's, specifically Buress's paragraphs 27, 52, and 56–59. *Id.*

In paragraph 27, though, Buress disputed the conclusion of resisting but admitted that Buress "briefly gestured to the three individuals with his free hand while Verne was cuffing his right hand." [ECF No. 137] at 7. The district court also overlooked that Buress did not dispute that he took ten (10) steps away and that Buress, indeed, "backed away" when asked to place his hands behind his back in response to paragraph 26. [ECF No. 120] at 6; [ECF No. 137] at 7. Verne submits that such agreed-upon conduct—coupled with what plainly appears on video— does not resemble a person standing still and allowing themselves to be arrested.

Similarly, in Verne's paragraph 32, he stated that the bodyworn camera footage shows Buress refusing to be placed in the police vehicle and, instead, making repeated demands for the reasons for his arrest. [ECF No. 120] at 7. Purporting to dispute this, but in actuality not disputing Verne's paragraph 32 at all, Buress stated the officers "*attempted* to put him into the back seat of the car" during his "repeated requests for this information." [ECF No. 137] at 8. By not addressing whether Buress *refused* to be placed in a police vehicle, there (again) was no dispute that Buress resisted his handcuffing and resisted his placement into a police vehicle for the purposes of detaining him. *See* Fed. R. Civ. P. 56(e). And, indeed, Buress

acknowledged that the video captures Officer Villegas informing him that he was being asked to sit in the police vehicle for detention purposes in paragraph 32 of his statement of material facts. [ECF No. 137] at 8.

In short, because the district court's factual findings (i.e., standing still, allowing handcuffing, and assistance into a police vehicle with no mention of refusal) does not comport with the video evidence, even as to certain facts on which the parties agree, the district court's order is factually and legally erroneous. S*ee Tinker v. Beasley*, 429 F.3d 1324, 1326 (11th Cir. 2005) (explaining that qualified immunity on summary judgment considers, with all reasonable inferences in the light most favorable to the non-moving party, whether the at-issue conduct violates a constitutional right and whether the right was clearly established.).

**b. The Legal Omissions**

There were also omissions of law. Rather than address whether Verne acted with "the lawful execution" of his duties by attempting to handcuff Buress for the purposes of *detaining* him under the reasonable suspicion standard, the district court made no mention of that argument whatsoever. [ECF No. 165] at 9.

Exclusively, in fact, the district court concluded that "Buress did not resist [Verne] 'in the lawful execution' of a legal duty" because of the district court's determination that "Verne lacked probable cause to arrest [Buress] in the first place[.]" *Id.* As such, the district court left Verne's argument that he had probable

cause or arguable probable cause to arrest Buress for resisting without violence—on the basis that Verne had the legal authority to detain Buress—unaddressed. *See id.*

Had the district court confronted Verne's argument, it would have observed that it well-settled that an arrest for resisting without violence, under Section 843.02 of the Florida Statutes, is authorized for disobedience to lawful orders during a lawful investigatory stop. *See P.B. v. State*, 95 So. 3d 944, 945 (Fla. 3d DCA 2012) ("An officer is engaged in the lawful execution of a legal duty when the officer legally detains an individual during an investigatory stop."). And it is also well-settled that handcuffing an individual does not automatically convert a detention into an arrest. *See United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985); *State v. Cheeks*, 294 So. 3d 934, 940 (Fla. 4th DCA 2020).

Consequently, the district court's analysis that there was no arguable probable cause to arrest Verne for resisting without violence simply because of its earlier determination that there was no probable cause for an underlying crime reflects an erroneous interpretation of Florida law. *See N.H. v. State*, 890 So. 2d 514, 517 (Fla. 3d DCA 2005) ("The fact that the police did not have probable cause to arrest . . . at the time he was initially stopped is of no consequence . . . because the police were engaged in 'the lawful exercise of a legal duty when N.H. resisted.").

The district court, due to this omission, subjected Verne to a heavier standard in three critical respects. ***One***, and more obviously, the district court did not consider

the validity of a resisting without violence arrest predicated on reasonable suspicion for an underlying crime—only probable cause for an underlying crime. This is important because reasonable suspicion to effectuate a stop is a lower standard than probable cause for an arrest. *See*, *e.g.*, *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007) ("While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." (cleaned up)).

More specifically, "reasonable suspicion of criminal activity may be formed by observing exclusively legal activity[] even if such activity is seemingly innocuous to the ordinary citizen." *Id.* (cleaned up). Indeed, all that is necessary is "a particularized and objective basis for suspecting legal wrongdoing" based on the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). For this reason, when assessing the "likelihood of criminal activity" for purposes of a lawful stop, such likelihood "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274.

*Two*, the district court's omission of the facts that irrefutably appear in the video—and the facts on which the parties do not dispute—resulted in a misapplication of the qualified immunity standard on summary judgment. This is

because unwarranted factual inferences were drawn which effected the district court's conclusion of whether the constitutional right was violated and whether qualified immunity was appropriate. *See Tinker*, 429 F.3d at 1326 (explaining that qualified immunity on summary judgment considers, with all reasonable inferences in the light most favorable to the non-moving party, whether the at-issue conduct violates a constitutional right and whether the right was clearly established.).

Those inferences were not warranted here because video evidence clearly controverted the version of events adopted by the Court. *See Pourmoghani–Esfahani*, 625 F.3d at 1315. And those inferences were unwarranted here not only because it was controverted by video evince but also because Buress did not dispute that he backed away, engaged with his unrestrained hand, and refused to sit in a police vehicle. *See generally* Fed. R .Civ. P. 56(a), (e) (articulating principles about undisputed facts material facts and remedies where parties fail to properly dispute material facts).

Had the district court analyzed qualified immunity through that lens, it would have found that Buress's physical and verbal conduct would have led a reasonable officer to have actual and arguable probable cause for resisting without violence.

In the proceedings below, Verne cited this Court's decision in *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified on other grounds by*, 14 F.3d 583 (11th Cir. 1994). In *Post*, this Court noted that a plaintiff who "raised

his hands" after being told he was "under arrest" and "without having been told to do so" entitled an officer to qualified immunity because the conduct could have been interpreted as raising one's hands in resistance under Florida law. *Id.*

Similarly, Verne cited *Pinto*—a district court decision which found raising one's arm while an officer attempts to apply handcuffs for detention purposes could form probable cause for a resisting without violence arrest. *See Pinto v. Rambosk*, No. 2:19-CV-551-JLB-MRM, 2021 WL 3406253, at *9 (M.D. Fla. Aug. 4, 2021). In that case, even though the plaintiff had testified "that he raised his hand because he was 'confused,'" the district court determined that the "act of pulling away created probable cause that he also committed resisting arrest." *Id.*

Buress, in his attempts to distinguish *Pinto* from his own case on summary judgment, averred that the distinguishing fact was the "undisputed" nature of "[Mr. Pinto] rais[ing] his harm to avoid being handcuffed" whereas Buress disputed the *reason* for why he moved his unrestrained arm. [ECF No. 138] at 13 n.6. That was a misstatement of *Pinto* and likely also led the district court into error. The court in *Pinto* found that it was "undisputed that Mr. Pinto raised his arm while Deputy Kinney attempted to apply handcuffs" as the basis for resisting without violence; it made no finding about the underlying motives or intent Mr. Pinto may have harbored when he did so. *See Pinto*, 2021 WL 3406253, at *9. To the contrary, the district court—as already indicated—emphasized that it made no difference that Mr. Pinto

pulled his hand away as a result of allegedly being confused. *Id.* Moreover, that reasoning was in line with this Court's reasoning that an officer can have arguable probable cause despite a plaintiff's "subjective intent" and "ultimate guilt or innocence." *See Jones v. Michael*, 656 F. App'x 923, 929 (11th Cir. 2016).

Importantly, under Florida law, resistance to a lawful order can be met by simply refusing to present one's hands for handcuffing or even refusing to get in a squad car. *See Savage v. State*, 494 So. 2d 274, 277 (Fla. 2d DCA 1986) ("One can resist, obstruct, or oppose an officer without committing a battery, for example, a person might struggle with an officer or refuse to present one's hands for handcuffing, or refuse to lie down when ordered, or refuse to put one's arms behind one's back, or refuse to get in a squad car when ordered to do so.").

Because Buress's physical and verbal conduct demonstrated his resistance to the detention-related orders, as captured on video, this Court should find that a reasonable officer would have actual and/or arguable probable cause to infer the conduct as resistance to Verne's lawful order.

***Lastly***, the third legal omission was any mention of clearly established law that would have given every reasonable officer under the circumstances notice that they lacked actual or arguable probable cause for arresting Buress for resisting without violence. [ECF No. 165] at 9.

Recall, it is a plaintiff's burden to rebut with clearly established law on summary judgment. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). And Buress did not do that in the proceedings below. [ECF No. 138] at 14.

Instead, based on Verne's review of the record, it appears Buress's response in opposition may have been the reason the district court erred. This is because Buress stated: "even if Plaintiff *had* resisted arrest by backing away slowly and slightly raising an arm to acknowledge the onlookers, there would still be no arguable probable cause to arrest Plaintiff for [resisting without violence] because Officer Verne had no basis to initiate the arrest in the first place." [ECF No. 138] at 14. That incomplete—and, thus, slightly inaccurate—statement of Florida law appears in the district court's order as the sole basis for rejecting Verne's qualified immunity argument with respect to actual and arguable probable case for resistance without violence. *See* [ECF No. 165] at 9 ("Because Officer Verne lacked probable cause to arrest in the first place, Buress did not resist him 'in the lawful execution' of a legal duty.").

Buress, it's true, contended that Verne lacked "*reasonable suspicion* to detain [him]." [ECF No. 138] at 14 (emphasis added). In fact, Buress even cited a Middle District of Florida case where qualified immunity was denied on summary judgment when a plaintiff failed to comply with an officer's orders where there was no legal

basis to detain the plaintiff. *See id.* (citing *Gonzalez-Torres v. Buswell*, No. 8:11-CV-2553-T-27TGW, 2014 WL 1272754, at *10 (M.D. Fla. Mar. 27, 2014)). However, because that legal citation was attached to a proposition about resisting an arrest, not resisting a *detention*, this appears to have resulted in the court's omission on whether there was *reasonable suspicion* for the potential crimes identified in Verne's summary judgment motion. And, again, that omission impacted the district court's determination as to whether no reasonable officer would have actual or arguable probable cause under the circumstances.

Regardless, the record is pellucid in that Buress attempted to confront Verne's argument about whether there was a "lawful execution" of Verne's legal duties when he issued orders to detain Buress. [ECF No. 138] at 14. That being said, it appears Buress cited *Gonzalez-Torres* as the clearly established law in support. [ECF No. 138] at 14.

As already stated, though, *Gonzalez-Torres* is a Middle District of Florida case. *See Gonzalez-Torres v. Buswell*, No. 8:11-CV-2553-T-27TGW, 2014 WL 1272754 (M.D. Fla. Mar. 27, 2014). Thus, it cannot qualify as clearly established law. *See Waldron*, 954 F.3d at 1304–05 (explaining that citing precedent requires that "materially similar cases from the United States Supreme Court, this Circuit, and/or the highest court of the relevant state can clearly establish the law.").

Nor is *Gonzalez-Torres* factually similar to *this* case because (1) it pertains to a detention and arrest of a plaintiff *within her residence* and (2) a "knock and talk" style investigation to which citizens are free not to cooperate with the investigation and, of course, deny a warrantless entry into their homes. *See Gonzalez-Torres*, 2014 WL 1272754, at *9–*10.

Further, this is not a situation where every objectively reasonable government official would know an arrest for resisting without violence is violative when there was reasonable suspicion for the crimes potentially at issue. *See Waldron*, 954 F.3d at 1305 (holding that a novel issue must be established with obvious clarity such that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted" (cleaned up)). After all, "reasonable suspicion is somewhat abstract." *Arvizu*, 534 U.S. at 274. Thus, the district court should have considered that arguable probable cause for Fourth Amendment purposes—especially as it related to the underlying reasonable suspicion for arguable probable cause for resisting without violence— because of the difficulties a reasonable officer would face when assessing the relevant legal doctrines for resisting without violence under these circumstances. *See*, *e.g.*, *Mullenix*, 577 U.S. at 12 (requiring that clearly established law prohibits the *particular* conduct and acknowledging that qualified immunity's specificity

requirement is important in the Fourth Amendment context due to the difficulties officers may face when applying relevant legal doctrines).

## c. Summary of Conclusions on Resisting Without Violence

To summarize, the district court erred, factually and legally, in its determination that a reasonable officer would have lacked actual and arguable probable cause to arrest Buress for resisting without violence. This is because (1) the video evidence shows Buress's physical and verbal resistance to orders and (2) Verne issued those orders to detain Buress under a reasonable suspicion standard. As issuing orders for the purposes of detaining a potential criminal is in furtherance of an officer's lawful execution of their duties provided there is reasonable suspicion for the stop, Verne had actual and arguable probable cause for the "lawful execution" requirement. And, indeed, Verne had reasonable suspicion for disorderly conduct, disorderly intoxication, bribery, unlawful compensation, or trespass on a public conveyance[5] to justify a lawful stop.

Likewise, Verne had actual and arguable probable cause to infer resistance to those orders and obstruction to the process of detainment, particularly in light of the video evidence demonstrating his physical and verbal resistance.

---

[5] Verne notes that he does not argue that there was actual or arguable probable cause for trespassing on a public conveyance in this appeal, but submits the record would satisfy the reasonable suspicion standard.

Accordingly, this Court should reverse and afford Verne qualified immunity because a reasonable officer would have had arguable and even actual probable cause to arrest Buress for resisting without violence under Florida law.

## B. Retaliation

The First Amendment guarantees "the freedom of speech." U.S. Const. amend. I. Consistent with that right, government officials may not subject "an individual to retaliatory actions for engaging in protected speech." *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1376 (11th Cir. 2021) (cleaned up). To state a claim for retaliation under the First Amendment, a plaintiff must show that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected his protected speech; and (3) a causal connection between the adverse conduct and the protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Obscenities, the incitement of violence, and "fighting words" never qualify as protected speech and, as such, cannot satisfy the first requirement. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 791 (2011). As for the second requirement, the existence of an adverse effect, a plaintiff must show "the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1254.

It is well-settled that, "[w]hen a police officer has probable cause to believe that a person is committing a particular public offense, he is justified in arresting that

person, even if the offender may be speaking at the time that he is arrested." *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-84 (11th Cir. 1998). In other words, a First Amendment retaliation claim predicated on a theory of retaliatory arrest *usually* fails if there was probable cause to arrest the suspect in the first place. *See id.* The word "usually" within the latter sentence is important here. This is because, in 2019, the U.S. Supreme Court held probable cause is not a per se bar to a First Amendment retaliatory arrest claim if Buress could present "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019). If a plaintiff fits into the "narrow" exception that requires a showing of similarly situated individuals, then the general rule that holds "probable cause should generally defeat a retaliatory arrest claim" will not apply. *Id.*

Appearing to acknowledge that caselaw without any citation to it, the district court resolved the retaliation claim against Verne by referring back to its determination that it found no probable cause to arrest Buress. [ECF No. 165] at 10.

In response to that conclusion, and for the reasons stated earlier in this brief, Verne submits that actual probable cause to effectuate Buress's arrest for disorderly conduct, bribery, unlawful compensation, and resisting without violence existed. Accordingly, the district court's conclusion that there were genuine issues of material fact as to the retaliation claim should be reversed because actual probable cause for

an arrest defeats a retaliatory arrest claim. *See Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003) (recognizing that a First Amendment retaliatory prosecution claim is "defeated by the existence of probable cause."); *Redd v. City of Enterprise*, 140 F.3d 1378, 1383-1384 (11th Cir. 1998) ("When a police officer has probable cause [or even arguable probable cause] to believe that a person is committing a particular public offense, he is justified in arresting that person, even if the offender may be speaking at the time that he is arrested.").

The district court did not address the limited exception to the rule established by *Nieves*. [ECF No. 165] at 10. But, for purposes of preservation, Verne echoes again that the limited exception does not apply. This is because the record shows no similarly situated individuals engaged in the same sort of conduct. To do so, Buress would need to identify other visibly inebriated, belligerent individuals who offered money to law enforcement officers in exchange for assisting in their safe transport and then show that such individuals were not arrested. In addition, Buress would have to identify individuals who physically and verbally resisted to the instruction to be handcuffed for detention purposes and then establish that those individuals were not arrested. Thus, *Nieves*'s narrow exception does not apply and the general rule—*i.e.*, probable cause for an arrest defeats a claim of retaliation—governs this action. *See Nieves*, 139 S. Ct. at 1727 ("After making the required showing [that similarly situated individuals were not arrested for engaging in the same conduct],

the plaintiff's claim may proceed in the same manner as claims where the plaintiff has met the threshold showing of the absence of probable cause."); *see also Redd*, 140 F.3d at 1383 (echoing that probable cause can defeat a retaliatory arrest claim).

Verne points out that he argued that Buress did not begin his interaction with protected speech. Indeed, Buress's $20 offer to a police officer is not protected speech because it would amount to unlawful compensation of a public official. *See United States v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972); *United States v. Burke*, No. 19-CR-322, 2022 WL 1970189, at *40 (N.D. Ill. June 6, 2022). Because Buress's inebriated interaction with Verne started with offering a police officer money in exchange for a favor that would have distracted Verne from his post, the rest of his statements are not protected speech either.

Further, Verne pointed out certain non-verbal conduct, which appears on bodyworn camera footage, associated with Buress's defiance of lawful orders and resistance in being detained. The district court, as far as Verne can tell, did not appear to factor in the non-verbal conduct associated with Buress's resistance, appearing to indicate that the arrest was based solely on his verbal conduct.

Because it appears Buress's non-verbal conduct coupled with his non-protected speech was the but-for cause, the district court erred. *See Nieves*, 139 S. Ct. at 1722 (2019) ("[A] plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury .

. . Specifically, [the motive] must be a 'but-for' cause, meaning the adverse action against the plaintiff would not have been taken absent the retaliatory motive.'").

Importantly, when considering causation for a retaliatory arrest claim, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury." *Id.* Nor is it enough to show that the protected speech "played a part, substantial or otherwise, in [the governmental] decision." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285 (1977).

The U.S. Supreme Court has recognized that retaliatory arrest claims typically have a "tenuous causal connection between the defendant's alleged animus and the plaintiff's injury" because "[t]he causal inquiry is complex" due to the fact that "[o]fficers frequently must make 'split-second judgments' when deciding whether to arrest, and the content and manner of a suspect's speech may convey vital information—for example, if [the suspect] is 'ready to cooperate.'" *Nieves*, 139 S. Ct. at 1723–24. Because there were several reasons to arrest Buress based on his non-protected speech, physical and verbal resistance to lawful orders, and other aspects of his demeanor and tone while plainly inebriated, Buress could not show a genuine issue of material regarding a but-for cause requirement. *See id.* at 1728.

Lastly, the district court's analysis does not explicitly address whether Verne is entitled to qualified immunity as to the retaliation claim against him. *See* [ECF

No. 165] at 10 ("Finally, as discussed in detail above, Officer Verne *lacked probable cause* to arrest the Plaintiff and there is a lively debate between the parties over the material facts with respect to Officer Verne's motivations for arresting the Plaintiff." (emphasis added)). Granted, the heading pellucidly states that there was "a genuine dispute of material fact regarding whether Officer Verne violated *clearly established* First Amendment rights by arresting the Plaintiff for his protected speech." *Id.* (emphasis added). And Verne acknowledges that, earlier in the district court's order, the district court determined there were genuine issues of material fact as to arguable probable cause for the false arrest claim against him. [ECF No. 165] at 5–10.

However, due to the omission, the district court did not identify clearly established law that would make a $20 offer to an individual acting as a police officer protected speech. *Id.* Nor did it identify a case with a similar fact pattern in this regard. In fact, because the district court focused on "the Plaintiff's version of events" and referred back to its discussion "with respect to disorderly conduct," there appears to be no analysis as to whether the $20 offer amounts to protected speech.

In sum, because Verne submits he has arguable probable cause as to the false arrest claim, arguable probable cause entitles him to qualified immunity as to the retaliation claim as well. *See Redd*, 140 F.3d at 1383 ("Because we hold that the officers had arguable probable cause to arrest Anderson for disorderly conduct, we

must hold that the officers are also entitled to qualified immunity from the plaintiffs' First Amendment claims.").

## II.   THE DISTRICT COURT ERRED BY DENYING LUIS VERNE STATE-LAW IMMUNITY AS TO THE STATE-LAW CLAIMS BROUGHT AGAINST HIM.

Buress also has a malicious prosecution and false arrest claim against Verne. [ECF No. 26]. Verne argued that state law immunity protected him on summary judgment. The district court disagreed by finding there were "sufficient facts to allow a reasonable jury to conclude that Officer Verne acted in bad faith, maliciously, or wantonly by arresting Buress without probable cause." [ECF No. 165] at 11. To support this finding, the district court noted that Buress claimed the arrest affidavit "*could* reflect a willfully fabricated version of events depending on the weight given to the conflicting evidence" and given "*potential* misstatements made to the prosecutor." *Id.* (emphasis added).

Verne disagrees. The district court's determination does not comport with the factual evidence in this regard. Here, it appears the district court placed too much emphasis on the state attorney's letter to reach this result. This is because the record citations used by the Court refers back to the State Attorney's Office's memorandum for its reasons as to why it dropped the charge of disorderly intoxication against Buress following the prosecutor's review of Verne's statement, the arrest affidavit, and the bodyworn camera footage. The letter, as previously indicated, acknowledges

that a group of bystanders began to gather and that the State Attorney's Office opted not to pursue the disorderly intoxication charge because the State could not prove the charge of disorderly conduct—specifically, the second element of causing a public disturbance—"beyond a reasonable doubt." [ECF No. 136-5] at 1, 4.

Of course, reasonable doubt is not the same thing as probable cause. The State Attorney's Office, in its memorandum, believed it was important to note Buress's celebrity status to explain how a crowd was drawn to the area. Thus, Verne's account that a crowd had formed was not misleading or false with respect to the disorderly intoxication charge in the arrest affidavit. Nor was it inaccurate with regards to Buress's intoxication. Viewed together, an officer could reasonably believe they had actual probable cause with respect to Buress's disorderly intoxication charge, under the circumstances, even though a prosecutor might later disagree under a reasonable doubt standard.

And Verne's arrest affidavit regarding disorderly intoxication is not at odds with the story he told the prosecutor's office. Further, by virtue of Verne dropping the trespass charge, it demonstrates that Verne did not act with bad faith, maliciousness or wanton disregard to Bures's right to be free of an unlawful conduct.

In short, Buress could not show a genuine issue of material fact as to whether Verne acted with bad faith, maliciousness, or wanton disregard to Buress's right to be free of an arrest without probable cause as to disorderly intoxication. As far as

Verne can discern here, the supposed conflict cited by the Court appears to be referring to factual disputes as it relates to the criminal trespass crime for which Buress was not charged.[6]

Lastly, for the reasons previously stated, it cannot be said that Verne acted with bad faith, maliciously, or with wanton disregard to Buress's rights for false arrest or malicious prosecution because there was probable cause for the charges of disorderly intoxication, disorderly conduct, bribery, unlawful compensation, and resisting without violence.

## <u>CONCLUSION</u>

For these reasons, the Court should reverse the order denying Luis Verne's motion for summary judgment on qualified immunity and/or state-law immunity grounds. In accordance with that ruling, the Court should remand this case for entry of judgment in Luis Verne's favor.

Respectfully submitted,

VICTORIA MÉNDEZ, City Attorney
BRYAN E. CAPDEVILA,
    Assistant City Attorney
Attorneys for Luis Verne
444 S.W. 2nd Avenue, Suite 945
Miami, FL 33130-1910

---

[6] As an original judicial proceeding never commenced for criminal trespass, it appears Buress may not have standing to draw a connection between the alleged disputes in evidence regarding criminal trespass and the charges that were never brought against him. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (articulating standing principles).

Tel.: (305) 416-1800
Fax: (305) 400-5071
Primary Email: bcapdevila@miamigov.com
                    smfernandez@miamigov.com

*/s/ Bryan E. Capdevila*
Bryan E. Capdevila
Assistant City Attorney
Florida Bar No. 119286

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this brief contains 11,776 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of 32(a)(6).

## **CERTIFICATE OF SERVICE**

I certify that on November 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Bryan E. Capdevila*
Bryan E. Capdevila
Assistant City Attorney
Florida Bar No. 119286