# No. 23-12895

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

HANNIBAL BURESS,

*Plaintiff-Appellee*,

v.

LUIS VERNE,

*Defendant-Appellant*,

CITY OF MIAMI, et al.,

*Defendants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA, NO. 1:20-CV-23078
BEFORE THE HON. ROBERT N. SCOLA, JR.

## BRIEF FOR PLAINTIFF-APPELLEE HANNIBAL BURESS

Sheila Bedi
NORTHWESTERN UNIVERSITY
  PRITZKER SCHOOL OF LAW
375 East Chicago Ave., 8th Floor
Chicago, IL 60611
(312) 503-2492

Faudlin Pierre
PIERRE SIMON
600 SW 4th Avenue
Fort Lauderdale, FL 33315
(305) 336-9193

Gregory Cui
RODERICK & SOLANGE MACARTHUR
  JUSTICE CENTER
501 H Street NE, Ste. 275
Washington, D.C. 20002
(202) 869-3751
gregory.cui@macarthurjustice.org

Vanessa del Valle
Danielle Berkowsky
RODERICK & SOLANGE MACARTHUR
  JUSTICE CENTER
160 East Grand Ave., 6th Floor
Chicago, IL 60611
(312) 503-1271

*Counsel for Plaintiff-Appellee Hannibal Buress*

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-2(b), Plaintiff-Appellee Hannibal
Buress, by and through the undersigned counsel, hereby certifies that the certificate
of interested persons filed by Defendant-Appellant Luis Verne is correct and
complete.

Pursuant to Eleventh Circuit Rule 26.1-3, the undersigned further certifies
that no publicly traded company or corporation has an interest in the outcome of
the case or appeal.

Respectfully submitted,

Date: January 12, 2024

*/s/ Gregory Cui*
Gregory Cui

**STATEMENT REGARDING ORAL ARGUMENT**

Oral argument is not necessary to resolve this case because the district court's decision reflects a straightforward and correct application of settled law.

Nevertheless, Mr. Buress respectfully requests oral argument to give a relatively junior attorney on his counsel team the opportunity to present argument before the Court.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ...................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

TABLE OF CITATIONS ................................................................................ iv

INTRODUCTION ...........................................................................................1

STATEMENT OF JURISDICTION..................................................................3

STATEMENT OF ISSUES ..............................................................................5

STATEMENT OF THE CASE..........................................................................6

   I.     Factual Background..............................................................................6

       A.   On December 9, 2017, Mr. Buress's Phone Died, And He Asked Officer Verne For Help Calling An Uber...........................6

       B.   Mr. Buress Called Officer Verne "Stupid As Fuck," And Officer Verne Decided To Arrest Mr. Buress................................8

       C.   Officer Verne Invented Two Charges To Justify The Arrest, But Both Were Swiftly Rejected. ...........................................11

   II.    Procedural History..............................................................................14

   III.   Standard Of Review ...........................................................................17

SUMMARY OF ARGUMENT .......................................................................17

ARGUMENT .................................................................................................21

   I.     Officer Verne Violated Mr. Buress's Clearly Established Fourth Amendment Rights By Arresting Him Without Arguable Probable Cause...................................................................................................21

    A.    Officer Verne Lacked Arguable Probable Cause For Disorderly Intoxication Or Disorderly Conduct. .................................................22

    B.    Officer Verne's New Claim Of Bribery And Unlawful Compensation Is Baseless.................................................27

    C.    Officer Verne's Attempt To Bootstrap A Resisting Arrest Charge Also Fails. .........................................................35

II.    Officer Verne Violated Mr. Buress's Clearly Established First Amendment Rights By Arresting Him In Retaliation For Making Fun Of Officer Verne. ........................................................44

    A.    A Reasonable Jury Could Find That Officer Verne Arrested Mr. Buress Because He Made Fun Of Officer Verne. ............................44

    B.    No Reasonable Officer Would Arrest Mr. Buress For Making A Joke. ...........................................................47

III.    Officer Verne Is Not Entitled To State-Law Immunity Because A Reasonable Jury Could Find That He Acted With Malice.......................48

CONCLUSION ...................................................51

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**Page(s)**

## Cases

*Access Now, Inc. v. Southwest Airlines Co.*,
385 F.3d 1324 (11th Cir. 2004) ...........................................................31

*Alamo Rent-A-Car, Inc. v. Mancusi*,
632 So. 2d 1352 (Fla. 1994) ................................................................49

*Gray ex rel. Alexander v. Bostic*,
458 F.3d 1295 (11th Cir. 2006) ...........................................................38

*Alston v. Swarbrick*,
954 F.3d 1312 (11th Cir. 2020) ....................................................18, 26

*Bateman v. State*,
240 So. 3d 36 (Fla. Dist. Ct. App. 2017) ............................................31

*Bennett v. Hendrix*,
423 F.3d 1247 (11th Cir. 2005) ..............................................20, 44, 48

*Bias v. State*,
118 So. 2d 63 (Fla. Dist. Ct. App. 1960) ............................................29

*Blake v. State*,
433 So. 2d 611 (Fla. Dist. App. Ct. 1983) ..........................................13

*Bott v. State*,
492 So. 2d 722 (Fla. Dist. Ct. App. 1986) ..........................................28

*Buress v. City of Miami*,
No. 21-12131, 2022 WL 2161438 (11th Cir. June 15, 2022)
..................................................................... 5, 12, 15, 20, 43, 44, 46

*Cantu v. City of Dothan*,
974 F.3d 1217 (11th Cir. 2020) ...........................................................17

*Carr v. Cadeau*,
658 F. App'x 485 (11th Cir. 2016) ...............................................26, 48

iv

*Carter v. Butts Cnty.*,
821 F.3d 1310 (11th Cir. 2016) ........................................................21

*Cook v. Gwinnett Cnty. Sch. Dist.*,
414 F.3d 1313 (11th Cir. 2005) ........................................................17

*D.A.W. v. State*,
945 So. 2d 624 (Fla. Dist. Ct. App. 2006) .........................................42

*D.G. v. State*,
661 So. 2d 75 (Fla. Dist. Ct. App. 1995) ...........................................40

*DeMartini v. Town of Gulf Stream*,
942 F.3d 1277 (11th Cir. 2019) ........................................................46

*Duncan v. City of Sandy Springs*,
No. 20-13867, 2023 WL 3862579 (11th Cir. June 7, 2023) .............47

*Durkin v. Davis*,
814 So. 2d 1246 (Fla. Dist. Ct. App. 2002) .......................................48

*Edger v. McCabe*,
84 F.4th 1230 (11th Cir. 2023) ........................................................43

*Ellison v. State*,
132 So. 3d 291 (Fla. Dist. Act. App. 2014) .......................................28

*English v. City of Gainesville*,
75 F.4th 1151 (11th Cir. 2023) .................................................3, 4, 24

*Ford v. City of Boynton Beach*,
323 So. 3d 215 (Fla. Dist. Ct. App. 2021) .........................................40

*Gonzales v. City of Belle Glade*,
287 So. 2d 669 (Fla. 1973) ...............................................................26

*Grider v. City of Auburn*,
618 F.3d 1240 (11th Cir. 2010) ...................................................33, 35

*Griggs v. State*,
994 So. 2d 1198 (Fla. Dist. Ct. App. 2008) .......................................38

*Hardigree v. Lofton*,
  992 F.3d 1216 (11th Cir. 2021) ........................................................25

*Henley v. Millsap*,
  No. 21-12231, 2022 WL 3654846 (11th Cir. Aug. 25, 2022)...........................32

*Jackson v. Sauls*,
  206 F.3d 1156 (11th Cir. 2000) ........................................................40

*Jay v. State*,
  731 So. 2d 774 (Fla. 1999) ........................................................19, 36

*Jessup v. Miami-Dade Cnty.*,
  440 F. App'x 689 (11th Cir. 2011) ....................................................40

*Johnson v. Jones*,
  515 U.S. 304 (1995)....................................................................3

*Kyser v. State*,
  533 So. 2d 285 (Fla. 1988) ...........................................................38

*L.A.T. v. State*,
  650 So. 2d 214 (Fla. Dist. Ct. App. 1995) ............................................45

*McDonough v. Garcia*,
  --- F.4th ---, 2024 WL 106093 (11th Cir. Jan. 10, 2024) ..........................23, 27

*McKinnon v. State*,
  17 So. 3d 860 (Fla. Dist. Ct. App. 2009) .............................................38

*Merenda v. Tabor*,
  506 F. App'x 862 (11th Cir. 2013)................................................25, 46, 47

*Morris v. Town of Lexington*,
  748 F.3d 1316 (11th Cir. 2014) .......................................................40

*Mowell v. City of Milton*,
  810 F. App'x 799 (11th Cir. 2020).....................................................25

*Nell v. State*,
  277 So. 2d 1 (Fla. 1973) .............................................................28

*Nieves v. Bartlett*,
  139 S. Ct. 1715 (2019) ........................................................47

*Olson v. Stewart*,
  737 F. App'x 478 (11th Cir. 2018) ....................................26

*Post v. City of Fort Lauderdale*,
  7 F.3d 1552 (11th Cir. 1993) .............................................42

*Powell v. Haddock*,
  366 F. App'x 29 (11th Cir. 2010) ................................42, 43

*Raines v. State*,
  65 So. 2d 558 (Fla. 1953) .................................................28

*Rankin v. Celebrity Cruises, Ltd.*,
  489 F. App'x 362 (11th Cir. 2012) ....................................48

*Roberts v. Kahl*,
  844 F. App'x 160 (11th Cir. 2021) ....................................39

*Scarbrough v. Myles*,
  245 F.3d 1299 (11th Cir. 2001) .........................................33

*Shields v. Smith*,
  404 So. 2d 1106 (Fla. Dist. Ct. App. 1981) ......................31

*Skop v. City of Atlanta*,
  485 F.3d 1130 (11th Cir. 2007) ...........................21, 25, 32

*Smith v. State*,
  546 So. 2d 459 (Fla. Dist. Ct. App. 1989) ........................36

*State v. Castillo*,
  877 So. 2d 690 (Fla. 2004) .................................19, 28, 29

*State v. Espinosa*,
  686 So. 2d 1345 (Fla. 1996) .............................................36

*State v. Gonzalez*,
  528 So. 2d 1356 (Fla. Dist. Ct. App. 1988) ......................30

*State v. Holden*,
299 So. 2d 8 (Fla. 1974) ...................................................................22

*State v. Lopez*,
522 So. 2d 997 (Fla. Dist. Ct. App. 1988) .......................................30

*State v. Saad*,
429 So. 2d 757 (Fla. Dist. Ct. App. 1983) .......................................29

*State v. Saunders*,
339 So. 2d 641 (Fla. 1976) .................................................................26

*Stephens v. Lin*,
612 F. App'x 581 (11th Cir. 2015) ............................................17, 51

*Stryker v. City of Homewood*,
978 F.3d 769 (11th Cir. 2020) ..........................................................17

*Toole v. City of Atlanta*,
798 F. App'x 381 (11th Cir. 2019) ....................................................25

*United States v. Acosta*,
363 F.3d 1141 (11th Cir. 2004) .........................................................37

*United States v. Kapperman*,
764 F.2d 786 (11th Cir. 1985) ...........................................................38

*United States v. Lindsey*,
482 F.3d 1285 (11th Cir. 2007) .........................................................40

*W.W. v. State*,
993 So. 2d 1182 (Fla. Dist. Ct. App. 2008) ......................................40

*WBY, Inc. v. DeKalb Cnty.*,
695 F. App'x 486 (11th Cir. 2017) .......................................24, 31, 43

*Wilkerson v. Seymour*,
736 F.3d 974 (11th Cir. 2013) ......................................................32, 33

*Williams v. Miami-Dade Police Dep't*,
297 F. App'x 941 (11th Cir. 2008) ....................................................50

*Windsor v. Eaves*,
    614 F. App'x 406 (11th Cir. 2015) .........................................................36, 37, 39

*Yancey v. Tillman*,
    No. 22-10867, 2022 WL 5071153 (11th Cir. Oct. 5, 2022) ...............................50

## Statutes

Fla. Stat. § 112.313(2) ...............................................................................................28

Fla. Stat. § 112.313(4) ...............................................................................................29

Fla. Stat. § 838.014(1) ...............................................................................................33

Fla. Stat. § 838.015(1) .........................................................................................28, 33

Fla. Stat. § 838.016(1) .........................................................................................28, 33

Fla. Stat. § 843.02 .....................................................................................................36

Fla. Stat. § 856.011(1) ...............................................................................................22

Fla. Stat. § 877.03 .....................................................................................................23

Fla. Stat. § 943.10(1) .................................................................................................29

## Other Authorities

16B Fla. Jur. 2d Criminal Law § 1638 .....................................................................28

Fla. Std. Jury Instruction (Crim.) 29.1 .....................................................................12

**INTRODUCTION**

In 2017, Hannibal Buress attended an international arts festival in downtown Miami. One evening, when his phone ran out of battery, he asked Officer Luis Verne for help calling an Uber to take Mr. Buress back to his hotel. Officer Verne refused. As Mr. Buress walked away, he saw Officer Verne kissing a woman. When Mr. Buress made a comment, Officer Verne ordered him to leave, and Mr. Buress complied. Nevertheless, Officer Verne followed Mr. Buress, who went to a nearby bar to charge his phone. Officer Verne ordered Mr. Buress to leave the bar, without any authority to do so. Again, Mr. Buress complied, but Officer Verne continued following Mr. Buress to a public street corner. There, Mr. Buress, laughing and joking around, said six words that Officer Verne could not handle: "This cop is stupid as fuck."

Officer Verne took personal offense to this jab. As Officer Verne later admitted, Mr. Buress's statement made him "salty." In retaliation, Officer Verne arrested Mr. Buress. Immediately after being called "stupid as fuck," Officer Verne said "get out of here" and, within seconds, ordered Mr. Buress to put his hands behind his back. All of this was captured by Officer Verne's body-worn camera.

To justify the arrest, Officer Verne invented two charges: trespassing at the bar and disorderly intoxication. Officer Verne's supervisor immediately rejected the trespass charge, however, because Officer Verne had no authority to enforce

the trespass laws at the bar. In an effort to make the disorderly intoxication charge stick, Officer Verne swore out an affidavit falsely claiming that Mr. Buress had been "aggressive" and "belligerent," and that he had caused a crowd to gather and vehicular traffic to slow. Those lies were exposed, however, by the video from Officer Verne's body-worn camera. After reviewing the footage, state prosecutors dropped the charge and closed the case.

In the decision below, the district court denied Officer Verne's motion for summary judgment, emphasizing the "lively debate between the parties over the material facts with respect to Officer Verne's motivations for arresting" Mr. Buress. Doc. 165 at 9-10. Based on the evidence showing that Officer Verne abused his power to arrest Mr. Buress for speech that Officer Verne found offensive, and then "willfully fabricated" evidence to justify the arrest, the district court denied Officer Verne qualified immunity and state-law immunity. *Id.* at 11.

Officer Verne now attempts to challenge the district court's decision through an interlocutory appeal. His appeal must be dismissed for lack of jurisdiction because it is premised entirely on the same "willfully fabricated version of the events" the district court rejected below. *Id.* Although Officer Verne tries to cast his "arguments as legal disputes," he really claims that this Court should credit his disputed version of the facts to find that Mr. Buress committed disorderly intoxication and disorderly conduct, as well as several other crimes Officer Verne

invented after the original charges failed. *English v. City of Gainesville*, 75 F.4th 1151, 1156 (11th Cir. 2023). That type of factual challenge cannot be brought as an interlocutory appeal. *See id.*

Taking the facts as the district court assessed them, as this Court must, Officer Verne's flimsy justifications for the arrest fall apart. The evidence shows that Mr. Buress was not aggressive or belligerent, and did not cause a public disturbance. Rather, as Officer Verne admitted, he arrested Mr. Buress because he was "salty" that Mr. Buress called him "stupid as fuck." Then Officer Verne tried to cover up his actions with lies. No immunity doctrine protects such clear abuses of power.

## STATEMENT OF JURISDICTION

This Court should dismiss Officer Verne's appeal for lack of jurisdiction. An interlocutory appeal is improper when the officer's challenge to qualified immunity is premised on the officer's disputed version of the facts. *See English*, 75 F.4th at 1156; *see also Johnson v. Jones*, 515 U.S. 304, 319-20 (1995). That is true here; indeed, Officer Verne openly admits that he challenges the "unwarranted factual inferences" drawn by the district court. Br. for Appellant 10.

In *English*, the district court similarly "denied summary judgment because of a genuine dispute of material fact." 75 F.4th at 1157. On appeal, the officers ignored the factual disputes and claimed that they were entitled to qualified

immunity because the plaintiff brandished a gun and ignored their commands, contrary to the plaintiff's evidence. *Id.* at 1156. Although the officers argued that they raised only "legal disputes" about qualified immunity, this Court recognized that their arguments depended on a jury crediting their version of the facts. *Id.* at 1156-57. Accordingly, this Court dismissed the appeal. *Id.*

Like the officers in *English*, Officer Verne's arguments that the arrest was justified depend on his own, disputed version of the facts. For example, he claims that Mr. Buress committed disorderly conduct and disorderly intoxication because Mr. Buress "was loud, aggressive, and combative," and "refused to obey Verne's commands." Br. for Appellant 26.[1] But Mr. Buress's evidence contradicts each of Officer Verne's factual claims; indeed, Mr. Buress's evidence shows that Officer Verne's account was "willfully fabricated." Doc. 165 at 11. Taking the evidence in the light most favorable to Mr. Buress, Mr. Buress spoke to Officer Verne in a "joking" and "light-hearted" manner, not loudly or aggressively; Mr. Buress "complied immediately" with Officer Verne's commands; and during the arrest,

---

[1] *See also, e.g.*, Br. for Appellant 26 (challenging determination that Mr. Buress was not "loud, aggressive, and combative" and obeyed police commands); *id.* at 28-29 (challenging determination that Mr. Buress did not move his hands or otherwise resist); *id.* at 30 ("[T]he district court's factual findings . . . do[] not comport with the video evidence."); *id.* at 32-33 (claiming the district court omitted facts); *id.* at 41 (seeking reversal of "the district court's conclusion that there were genuine issues of material fact"); *id.* at 43 (faulting the district court for not "factor[ing] in the non-verbal conduct"); *id.* at 46 ("The district court's determination does not comport with the factual evidence.").

Mr. Buress "allow[ed] himself to be handcuffed and st[ood] still without requiring restraint." Doc. 165 at 3, 8-9. The reason for the arrest, as Officer Verne admitted, was simply that Officer Verne was "salty" about being called "stupid as fuck." *See Buress v. City of Miami*, No. 21-12131, 2022 WL 2161438, at *2-3 (11th Cir. June 15, 2022).

Under those circumstances, Officer Verne's justifications fall apart, and he presents no argument that he can prevail under Mr. Buress's version of events. *See* Br. for Appellant 23 ("Of course, probable cause . . . cannot be based on mere words except in very limited circumstances . . . [a]nd Verne acknowledges that those limited circumstances are not applicable to this case."). This appeal must be dismissed.

## STATEMENT OF ISSUES

1.      Whether Officer Verne violated Mr. Buress's clearly established Fourth Amendment rights by arresting Mr. Buress without arguable probable cause because Mr. Buress made fun of Officer Verne.

2.      Whether Officer Verne violated Mr. Buress's clearly established First Amendment rights by arresting Mr. Buress in retaliation for making fun of Officer Verne.

3.      Whether a reasonable jury could find that Officer Verne acted with malice, and therefore is not entitled to state-law immunity, when he arrested Mr.

Buress without probable cause, swore out a fabricated arrest affidavit, and made further false statements to the prosecutor.

## STATEMENT OF THE CASE

In this civil rights action, Mr. Buress sued Officer Verne, his partner, and the City of Miami for violations relating to Officer Verne's false arrest and malicious prosecution of Mr. Buress. As the district court recognized, taking the evidence in the light most favorable to Mr. Buress, Officer Verne lacked arguable probable cause to arrest, and instead arrested Mr. Buress in retaliation for making fun of Officer Verne. Accordingly, the district court properly denied Officer Verne's motion for summary judgment.

## I. Factual Background

### A. On December 9, 2017, Mr. Buress's Phone Died, And He Asked Officer Verne For Help Calling An Uber.

Hannibal Buress is a well-known stand-up comedian and actor. Doc. 165 at 1. In 2017, Mr. Buress visited Miami to attend Art Basel, an international art festival hosted in cities around the world. *Id.* at 2. On December 9, Mr. Buress and a friend went to a few local bars in the Miami Beach neighborhood of Wynwood. *Id.* That evening, Mr. Buress's phone ran out of battery. *Id.* Accordingly, he went to find a ride back to his hotel. *Id.*

Officer Verne was stationed at a nearby street corner. Doc. 136-4 at 60. Mr. Buress walked up to Officer Verne and asked for help calling an Uber. Doc. 165

at 2. Mr. Buress made clear that he was not asking Officer Verne to pay for the Uber, stating, "call me an Uber and I'll give you $20." *Id.* As Officer Verne admitted, "it was obvious that [Mr. Buress] did not have a usable cell phone or a means of transportation available to him," which is why he was asking for help. Doc. 51-1 at 3.

Officer Verne refused to help. Doc. 165 at 2. Accordingly, Mr. Buress walked away. *Id.* By Officer Verne's own admission, Mr. Buress had not done anything to warrant an arrest. *See* Doc. 119-2 at 139.

As Mr. Buress walked away, he looked back and saw Officer Verne kissing a woman, and Mr. Buress made a joke about it. Doc. 165 at 2. Embarrassed, Officer Verne ordered Mr. Buress to leave. *Id.*; Doc. 119-1 at 139. Officer Verne never ordered Mr. Buress where to go or not go; he just said "leave." Doc. 119-1 at 133, 139. Mr. Buress complied and entered a nearby bar to charge his phone. Doc. 119-2 at 138; Doc. 165 at 2; *see* Doc. 119-1 at 133.

Officer Verne followed Mr. Buress into the bar and again told him to leave. Doc. 165 at 2. Officer Verne had no legal authority to do so. Officer Verne later claimed that Mr. Buress was "trespassing," Doc. 119-2 at 145, but that was false. Miami police officers, including Officer Verne, were trained that an officer can only enforce the trespass laws if the officer is asked to do so "by the person who is in charge of that property," or the establishment gives the police prior authorization

through a "trespass affidavit." Doc. 136-4 at 33, 209. Establishments that file trespass affidavits will also post signs warning "no trespass." Doc. 136-4 at 33. The bar Mr. Buress had entered did not have any signs posted, and it did not have a trespass affidavit on file. Doc. 136-4 at 209. Nor had anyone asked Officer Verne to order Mr. Buress to leave, as Mr. Buress was not threatening or endangering anyone. Doc. 136-4 at 86-87; Doc. 119-2 at 140-41, 149-50, 152; Doc. 119-1 at 173.

Nevertheless, Mr. Buress complied with Officer Verne's order, having been inside "less than a minute." Doc. 165 at 2; Doc. 119-1 at 142, 146. Mr. Buress was unnerved that Officer Verne was following him and felt the situation had become "slightly dangerous." Doc. 119-1 at 133, 145.

## B. Mr. Buress Called Officer Verne "Stupid As Fuck," And Officer Verne Decided To Arrest Mr. Buress.

Officer Verne followed Mr. Buress back to the street corner and turned on his body-worn camera, which captured the entire sequence leading up to the arrest. Doc. 165 at 2. Contrary to the false account that Officer Verne later gave, *see* Doc. 119-2 at 165, the video shows that Mr. Buress was not behaving aggressively. To the contrary, Mr. Buress was smiling and laughing while he spoke to Officer Verne from several feet away. *See* Doc. 119-5 ("BWC Video") at 0:04-0:05. The video also shows that Mr. Buress did not cause a public disturbance. In fact, a group of three people walked past Mr. Buress "with barely a glance." Doc. 165 at 8; BWC

Video at 0:11-0:12. Shortly after that, a second group of people walked past Mr. Buress without noticing or looking up from their phones. BWC Video at 0:17-0:18. As Officer Verne later admitted, the passersby "just kept on walking through the crosswalk and walked right by Mr. Buress." Doc. 119-2 at 157; *see also id.* at 159 (Officer Verne agreeing that nothing suggested that any vehicle traffic was due to Mr. Buress).

When the camera began recording audio,[2] it captured Mr. Buress laughing and joking around. BWC Video at 0:30-0:31. Mr. Buress looked into the camera and said, "Hey, it's me, what's up, this cop is stupid." *Id.* at 0:37-0:41. Mr. Buress added, "This cop is stupid as fuck." *Id.* at 0:47-0:48.

Officer Verne took personal offense. As he later admitted, the joke made him "salty." *Id.* at 1:24-1:26, 5:49-5:52. Officer Verne reacted by stepping towards Mr. Buress and saying, "[G]et out of here." *Id.* at 0:51. In response to that command, Mr. Buress started backing away, and within seconds, Officer Verne ordered Mr. Buress to put his hands behind his back and began the arrest. *Id.* at 0:50-0:54.

Mr. Buress had done nothing to warrant an arrest. As Officer Verne later admitted under oath, when he made the arrest, Mr. Buress was not threatening him or causing any crowd to form. Doc. 119-2 at 160. In fact, right as Mr. Buress called

---

[2] For technical reasons, the camera did not record audio for the first thirty seconds.

Officer Verne "stupid," a group of three people walked past Mr. Buress without stopping or noticing. BWC Video at 0:40-0:42.

Accordingly, Mr. Buress asked why he was being arrested. *Id.* at 0:54-0:56. Officer Verne stalled for time to think, stating, "I'll let you know once you put your hands behind your back." *Id.* at 0:59-1:01. Mr. Buress did so, "continu[ing] to ask Officer Verne why he was under arrest, but also allow[ing] himself to be handcuffed and stand[ing] still without requiring restraint." Doc. 165 at 3; *see* BWC Video at 1:01-1:12. Officer Verne kept stalling, stating, "I'll let you know." BWC Video at 1:12-1:13.

While Mr. Buress was being handcuffed, a group of three people walked by and recognized him. *Id.* at 1:15-1:16. One of the bystanders greeted Mr. Buress, and Mr. Buress responded, "Hey, hey, what's happening?" *Id.* at 1:16-1:17. Mr. Buress told the group that he was being arrested for making fun of Officer Verne. *Id.* at 1:19-1:21. One person asked Officer Verne, "What's the charge?" *Id.* at 1:26-1:27. Officer Verne refused to answer, stating, "You'll find out in a little bit." *Id.* at 1:27-1:29.

The bystanders began filming the arrest in order to document Officer Verne's abuse of Mr. Buress's rights. *Id.* at 1:33-1:36. Officer Verne tried to stop them, ordering them to "get out of here." *Id.* at 1:37-1:41. One person invoked his right to record the police, asking, "This is legal, correct?" *Id.* at 1:45-1:47. Officer

Verne never answered, repeating, "Guys, get out of here." *Id.* at 1:54-1:56. The three individuals continued filming without causing any public disturbance. *Id.*

Meanwhile, Mr. Buress was "stand[ing] still without requiring restraint" and continued asking, "What's the charge?" Doc. 165 at 3; BWC Video at 2:03-2:06. Officer Verne claimed, "You'll find out, I'm going to put it in writing." BWC Video at 2:10-2:11. One of the bystanders laughed and told Officer Verne, "You already look like you don't know what you're doing." *Id.* at 2:40-2:42.

Embarrassed, Officer Verne told Mr. Buress to "go to the car," away from the bystanders. *Id.* at 2:42-2:43. Mr. Buress asked Officer Verne to read him his rights. *Id.* at 2:47-2:48. Officer Verne responded, "I don't need to read you anything." *Id.* at 2:49-2:50. When Mr. Buress stated that he was entitled to be read his rights, Officer Verne responded, "I told you about seven times to leave, and you refused to leave." *Id.* at 2:51-2:55. Officer Verne was then joined by his partner, Elio Villegas, and they took Mr. Buress to the police car. *Id.* at 2:58-4:00.

### C. Officer Verne Invented Two Charges To Justify The Arrest, But Both Were Swiftly Rejected.

At the police car, Officer Verne at last came up with two charges: "trespassing" and "disorderly intox." *Id.* at 5:09-5:13; *see also* Doc. 119-2 at 161-62. Mr. Buress saw through both charges and told Officer Villegas that Officer Verne was "just salty that I roasted" him. BWC Video at 5:49-5:51. Officer Verne agreed, "Yeah, I am." BWC Video at 5:51-5:52. In other words, he admitted that

he had "arrest[ed] Buress for a retaliatory purpose." *Buress*, 2022 WL 2161438, at *3.

Accordingly, Mr. Buress told Officer Villegas that he would not get in the car because the officers lacked probable cause and Mr. Buress did not do anything wrong. BWC Video at 5:53-6:03. As Mr. Buress was speaking to Officer Villegas, Officer Verne pulled Mr. Buress into the car from behind. *Id.* at 6:49-7:00.

Following the arrest, Officer Verne prepared an arrest affidavit that accused Mr. Buress of disorderly intoxication and trespass. *See* Doc. 136-4 at 88; Doc. 136-2. To justify the charges, Officer Verne falsely claimed Mr. Buress became "angry and belligerent" when Officer Verne refused to help call an Uber. Doc. 136-2; Doc. 136-4 at 61. Officer Verne further misrepresented that Mr. Buress entered the bar in defiance of Officer Verne's orders, even though Officer Verne never told Mr. Buress not to enter the venue. Doc. 136-2. Officer Verne also falsely asserted that Mr. Buress created a public disturbance by "yelling profanities" and causing a crowd to gather and "vehicular traffic" to slow "as they watched [him] being disorderly." Doc. 136-2; Doc. 136-4 at 61.[3] As the district court later recognized, a

---

[3] Officer Verne also falsely asserted that Mr. Buress was "highly intoxicated." Doc. 136-2; Doc. 136-4 at 63. Under Florida's disorderly intoxication statute, "intoxication" means "more than merely being under the influence of an alcoholic beverage." *See* Fla. Std. Jury Instruction (Crim.) 29.1. To be "intoxicated," a person "must have been so affected from the drinking of an alcoholic beverage as to have lost or been deprived of the normal control of either [his] body or [his] mental faculties, or both." *Id.* Contrary to Officer Verne's claim, Mr. Buress was

reasonable jury could find that this was a "willfully fabricated version of events." Doc. 165 at 11.[4]

The police sergeant on duty that night reviewed the affidavit and concluded immediately that "we don't have a trespass." Doc. 136-4 at 85-86. The sergeant recognized that no one had asked Officer Verne to order Mr. Buress to leave the bar, the bar did not have a trespass affidavit on file, and Officer Verne did not see any "no trespass" signs. *Id.* Finding there was "nothing [in] the narrative that supports a trespass charge," the sergeant called Officer Verne and not only told him that the charge was invalid, but also directed him to remove the charge from the affidavit entirely. *Id.* at 85-88.

Based on Officer Verne's false claim that Mr. Buress was "angry and belligerent" and that his behavior caused "a crowd to gather" and traffic to stop, however, the sergeant approved the charge of disorderly intoxication. *Id.* at 62-64,

---

not deprived of his physical or mental faculties; indeed, Officer Verne's body-worn camera shows Mr. Buress walking and speaking competently. *See* Doc. 138 at 7 n.3; *Blake v. State*, 433 So. 2d 611, 612 (Fla. Dist. App. Ct. 1983) (finding no disorderly intoxication even though the person had consumed alcohol and questioned why the police were "picking on him").

[4] Officer Verne's abuse of power and willful fabrication of evidence were part of a broader pattern of misconduct at the Miami Police Department, including an incident in January 2017 in which Officer Verne attacked and choked someone who allegedly insulted Officer Verne. *See* Doc. 137 ¶ 65. The Internal Affairs Section of the Miami Police Department substantiated the allegations against Officer Verne and found he was "less than truthful" in his sworn statement about the events. *Id.*; *see* Doc. 122-7 at 7-10 ("The facts do not support Officer Verne's statement.").

72-73. The sergeant recognized that it is "not a crime" to be intoxicated. *Id.* at 100. But the sergeant had not reviewed Officer Verne's body-worn camera video, and so the sergeant relied on Officer Verne's sworn statement. *Id.* at 62, 117.

Officer Verne doubled down on his falsified version of events a month later when he gave a statement to the Assistant State Attorney. *See* Doc. 137 ¶ 64; Doc. 136-3 at 2; Doc. 136-5 at 2. Despite his sergeant's explicit rejection of the trespass charge, Officer Verne even asserted that "he ha[d] authority to ask [Mr. Buress] to leave" the bar. Doc. 136-3 at 2.

The prosecutor reviewed the body-worn camera video and realized that it squarely contradicted Officer Verne's false account. Doc. 136-5 at 2-3. The State Attorney's Office found that "[a]t no point during the body worn camera footage is [Mr. Buress] observed entering roadways, defacing property or injuring another," or otherwise "creat[ing] a danger" to anyone. *Id.* at 3. The Office also determined there was no evidence that Mr. Buress's conduct or use of profanity caused a crowd to gather, and that the "small group of bystanders" recording the arrest "does not establish a public disturbance." *Id.* Accordingly, the Office dropped the charge and closed the case. *Id.* at 3-4.

## II. Procedural History

Mr. Buress sued Officer Verne, Officer Villegas, and the City of Miami, alleging among other things that Officer Verne violated the Fourth Amendment

and First Amendment by falsely arresting Mr. Buress in retaliation for making fun of Officer Verne. Doc. 26 at 25-26. Mr. Buress also brought state-law claims for malicious prosecution and false arrest. *Id.* at 28-30.

The district court denied Defendants' motion to dismiss. Doc. 35. Officer Villegas took an interlocutory appeal to challenge the denial of qualified immunity, and this Court affirmed. *See Buress*, 2022 WL 2161438. In doing so, this Court recognized that Officer Verne's acknowledgement that he was "just salty" about Mr. Buress's joke could reasonably be construed as an admission that "Verne was arresting Buress for a retaliatory purpose." *Id.* at *3.

Defendants moved for summary judgment, arguing that Officer Verne had probable cause to arrest Mr. Buress for disorderly intoxication, disorderly conduct, and trespass. Doc. 121 at 11-14. In addition, Officer Verne advanced several new justifications for the arrest. First, he claimed that, when Mr. Buress said "call me an Uber and I'll give you $20," Mr. Buress committed bribery and unlawful compensation for official behavior. *Id.* at 9-11. Second, Officer Verne claimed that Mr. Buress resisted arrest by "back[ing] away from Officer Verne and refus[ing] to place his hands behind his back," and by "us[ing] his right hand to engage with" the three individuals who recorded the arrest. *Id.* at 15.

The district court denied Officer Verne's motion, emphasizing the "lively debate between the parties over the material facts with respect to Officer Verne's

motivations for arresting" Mr. Buress. Doc. 165 at 9-10. Taking the evidence in the light most favorable to Mr. Buress, the district court found that Officer Verne lacked arguable probable cause for any crime. *Id.* at 5-9. For example, the district court rejected the claim of disorderly intoxication and disorderly conduct for the same reason as the State Attorney's Office: The evidence showed that Mr. Buress never endangered anyone or caused a public disturbance. *Id.* at 4, 7-8. To the contrary, the body-worn camera video "show[ed] multiple groups of pedestrians walking past Mr. Buress with barely a glance." *Id.* at 8.

As to the new claims of bribery and unlawful compensation, the district court recognized that those crimes occur only when money is offered in order to influence an official act, and Officer Verne failed to make any "serious attempt to argue that calling an Uber is within the scope of a police officer's official duties." *Id.* at 7. In addition, the district court rejected the claim of resisting arrest because there had been no lawful basis to arrest Mr. Buress in the first place. *Id.* at 9.

Instead, the district court found that the evidence taken in the light most favorable to Mr. Buress establishes that Officer Verne arrested Mr. Buress because he made fun of Officer Verne. *Id.* at 10. To cover up the false arrest, Officer Verne engaged in "willful fabrication of evidence," falsifying the contents of his arrest affidavit and making further misstatements to the prosecutor. *Id.* at 11-12. Thus, the district court denied qualified immunity and state-law immunity. *Id.* at 5-12.

### III. Standard Of Review

This Court reviews the denial of qualified immunity and state-law immunity at summary judgment *de novo*. *Cantu v. City of Dothan*, 974 F.3d 1217, 1228 (11th Cir. 2020). This Court must construe the evidence and draw all inferences in the light most favorable to Mr. Buress. *Stryker v. City of Homewood*, 978 F.3d 769, 773 (11th Cir. 2020). In addition, this Court accepts the district court's determination of what a reasonable jury could find as long as there is any "support for those findings in the summary judgment record." *Stephens v. Lin*, 612 F. App'x 581, 582 (11th Cir. 2015); *see Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1315 n.4 (11th Cir. 2005).

## SUMMARY OF ARGUMENT

I.    Officer Verne violated Mr. Buress's clearly established Fourth Amendment rights by arresting him without arguable probable cause. No reasonable officer would believe that Mr. Buress had committed any of the crimes Officer Verne now uses to justify the arrest.

I.A.    No reasonable officer would believe that Mr. Buress committed disorderly intoxication or disorderly conduct. Taking the facts in the light most favorable to Mr. Buress, as this Court must, Officer Verne arrested Mr. Buress because of a joke that Officer Verne found offensive. Officer Verne himself concedes that "probable cause for disorderly conduct cannot be based on mere

words except in very limited circumstances," and "those limited circumstances are not applicable to this case." Br. for Appellant 23. Accordingly, no reasonable officer would have believed the arrest was lawful. *See Alston v. Swarbrick*, 954 F.3d 1312, 1319 (11th Cir. 2020) ("[B]y 2011, it was clearly established that words alone cannot support probable cause for disorderly conduct—including profanity regarding police officers.").

Officer Verne makes no argument that he had arguable probable cause when the evidence is taken in the light most favorable to Mr. Buress. Instead, his entire argument depends on his claim that Mr. Buress "created a breach of the peace or started a public disturbance." Br. for Appellant 36. That narrative—the same false narrative from his arrest affidavit—is contradicted by the evidence, as both the State Attorney's Office and the district court recognized. Indeed, a reasonable jury could find that Officer Verne's version of the events was "willfully fabricated." Doc. 165 at 11. Accordingly, it must be disregarded at summary judgment.

I.B.  No reasonable officer would believe Officer Verne's incredible claim that Mr. Buress committed bribery and unlawful compensation. Officer Verne invented this theory during litigation, once he realized that his claims of trespass (now abandoned) and disorderly intoxication would fail. This new theory does too.

As the district court recognized, bribery and unlawful compensation concern the offering of benefits to public officials in order to influence official acts. *See,*

*e.g.*, *State v. Castillo*, 877 So. 2d 690, 691 (Fla. 2004). Calling an Uber is not an official act, and Officer Verne waived any argument to the contrary. *See* Doc. 165 at 7 (noting Officer Verne's failure to make any "serious attempt" to address the official act requirement). That, alone, dispenses with this claim.

In addition, Mr. Buress did not offer Officer Verne money in order to influence him. Rather, Mr. Buress offered $20 in order to cover the cost of an Uber. Officer Verne himself acknowledged that "[b]y asking me to call him an Uber it was obvious that [Mr. Buress] did not have a usable cell phone." Doc. 51-1 at 3. Asking for help calling an Uber is not a crime, as Officer Verne concedes. *See* Br. for Appellant 20 ("True, Verne could have called an Uber for [Mr. Buress]."). No reasonable officer would think that asking for help calling an Uber and providing money to cover the cost is a crime, either.

I.C.   No reasonable officer would believe that Mr. Buress resisted Officer Verne's unlawful arrest. Officer Verne's lack of probable cause alone defeats this argument because Florida law clearly provides that if "an arrest is not lawful, then a defendant cannot be guilty of resisting it." *Jay v. State*, 731 So. 2d 774, 775 (Fla. 1999). Unable to dispute that rule, Officer Verne attempts to recharacterize his arrest as an investigatory stop. That is plainly wrong: As he himself stated under oath, "I arrested Mr. Buress." Doc. 51-1 at 3.

In addition, Mr. Buress never resisted the arrest, lawful or not. As the district court found, Mr. Buress "allow[ed] himself to be handcuffed and st[ood] still without requiring restraint." Doc. 165 at 3. Officer Verne's arguments to the contrary are nothing more than an attempt to dispute the district court's factual determinations.

II.     Officer Verne violated Mr. Buress's clearly established First Amendment rights by arresting Mr. Buress because he called Officer Verne "stupid as fuck." Officer Verne himself admitted that night that he was "just salty" that Mr. Buress made fun of him. *Buress*, 2022 WL 2161438, at \*3. That admission, taken "in the light most favorable to Buress," establishes that "Verne was arresting Buress for a retaliatory purpose." *Id.* Officer Verne tries to dispute those facts, including with several arguments raised for the first time on appeal. None can change what the evidence taken in the light most favorable to Mr. Buress shows. *See, e.g.*, Doc. 119-2 at 185 (Q: "When Mr. Buress decided . . . [to] call you stupid as fuck, that's when you decided to arrest him; correct?" A: "Yes."). No reasonable officer would arrest someone in retaliation for a joke. *See, e.g.*, *Bennett v. Hendrix*, 423 F.3d 1247, 1256 (11th Cir. 2005) ("[T]his Court has held since at least 1988 that it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights.").

III.    Finally, a reasonable jury could find that Officer Verne acted with malice, and thus is not entitled to state-law immunity. Officer Verne's lack of probable cause alone resolves this issue, and Officer Verne has no response to this well-settled rule. In addition, malice can be inferred from Officer Verne's "willfully fabricated version of events" in his arrest affidavit and his "further potential misstatements made to the prosecutor." Doc. 165 at 11.

## ARGUMENT

As the district court properly held, qualified immunity does not shield an officer who abuses his power by arresting someone for making a joke, and then fabricates pretextual bases for the arrest. Officer Verne's interlocutory appeal should be denied.

## I.    Officer Verne Violated Mr. Buress's Clearly Established Fourth Amendment Rights By Arresting Him Without Arguable Probable Cause.

By 2017, it was "well established that a warrantless arrest without probable cause violates the Fourth Amendment." *Carter v. Butts Cnty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (cleaned up). Thus, where "a reasonable officer could not conceivably have thought that he had probable cause," qualified immunity must be denied. *Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007).

On appeal, Officer Verne claims his arrest was justified by three sets of offenses: (A) disorderly intoxication and disorderly conduct, (B) bribery and

unlawful compensation for official behavior, and (C) resisting arrest. *See* Br. for

Appellant 12-40. None is supported by arguable probable cause.

### A. Officer Verne Lacked Arguable Probable Cause For Disorderly Intoxication Or Disorderly Conduct.

During and after the arrest, Officer Verne used two charges to justify his

actions: trespassing and disorderly intoxication. *See, e.g.*, BWC Video at 5:09-

5:13; *see also* Doc. 119-2 at 161-62. Both charges were swiftly rejected as invalid,

and Officer Verne has now abandoned any defense of the trespass charge. *See* Br.

for Appellant 12-40; *see also* Doc. 136-4 at 87-88; Doc. 136-5 at 3-4. On appeal,

Officer Verne's claim of disorderly intoxication and disorderly conduct again fails.

#### i. *A Reasonable Jury Could Find That Mr. Buress Did Not Endanger Anyone Or Cause A Public Disturbance.*

As the district court properly recognized, Florida's disorderly conduct and

disorderly intoxication statutes apply only to conduct that is dangerous or

disruptive to others. Doc. 165 at 7; *see State v. Holden*, 299 So. 2d 8, 9 (Fla. 1974)

("[T]he discretion vested by the [disorderly intoxication] statute is controlled and

confined to situations where the public safety is endangered."). To commit

disorderly intoxication, a person must either "endanger the safety of another person

or property" or "cause a public disturbance." Fla. Stat. § 856.011(1). Similarly, to

commit disorderly conduct, a person must commit an act that is "of a nature to

corrupt the public morals, or outrage the sense of public decency, or affect the

peace and quiet" of others, such as "brawling or fighting" or "breach of the peace." Fla. Stat. § 877.03.

A reasonable jury could find that Mr. Buress never endangered anyone or caused a public disturbance. That is evident from the video from Officer Verne's body-worn camera: As the district court found, the video shows that "multiple groups of pedestrians walk[ed] past Buress with barely a glance." Doc. 165 at 8. The state prosecutor also reviewed the video and concluded that at no point did Mr. Buress enter roadways, deface property, injure anyone, or otherwise "create[] a danger." Doc. 136-5 at 3. The only people who stopped did so *after* Officer Verne had begun to unlawfully arrest Mr. Buress, in order to record *Officer Verne*'s abuse of Mr. Buress's rights.[5] *Id.*; *see* BWC Video at 1:00-1:20. Even this "small group of bystanders" did not create a public disturbance. *See* Doc. 136-5 at 3; *see McDonough v. Garcia*, --- F.4th ---, 2024 WL 106093, at *10 (11th Cir. Jan. 10, 2024) ("As Florida courts have explained, 'the mere fact that other people come

---

[5] Officer Verne interprets the body-worn camera video to suggest that two or three individuals followed Officer Verne and Mr. Buress from the bar. *See* Br. for Appellant 24. But the evidence taken in the light most favorable to Mr. Buress shows that the individuals did not arrive until after Officer Verne began arresting Mr. Buress, as both the district court and the State Attorney's Office recognized. *See* Doc. 165 at 8; Doc. 136-5 at 3; Doc. 137 ¶ 22. And regardless of when they arrived, a "small group of bystanders" does not constitute a public disturbance. *See* Doc. 136-5 at 3.

outside or stop to watch what is going on is insufficient to support a conviction for disorderly conduct.'").

Officer Verne fails to make any argument that his actions were justified under these circumstances. Indeed, Officer Verne appears to concede that he is not entitled to qualified immunity if a reasonable jury could find, as Mr. Buress's evidence shows, that Officer Verne arrested Mr. Buress because he called Officer Verne "stupid as fuck." *See* Br. for Appellant 23. Instead, Officer Verne argues that Mr. Buress created a public disturbance by falsely claiming that Mr. Buress was "loud, aggressive, and combative as he yelled profanities at Verne causing onlookers to observe their exchange," that Mr. Buress caused a crowd to gather, and that he engaged in "physical resistance" to the arrest. Br. for Appellant 24, 26.[6]

This is nothing more than the same fabricated narrative Officer Verne put in his arrest affidavit. *See* Doc. 165 at 11. None of the factual assertions on which Officer Verne relies may be considered in this appeal because they are "hotly

---

[6] In an effort to override the district court's assessment of the record, Officer Verne claims that the district court's account is "blatantly contradicted" by the video from Officer Verne's body-worn camera. Br. for Appellant 28. That is false: The district court (like the State Attorney's Office) properly interpreted the video to support Mr. Buress's account, and even if this Court perceives any ambiguity, it must be resolved in Mr. Buress's favor. *See English*, 75 F.4th at 1156 (crediting the plaintiff's account where video evidence was "up for interpretation"); *WBY, Inc. v. DeKalb Cnty.*, 695 F. App'x 486, 488 n.3 (11th Cir. 2017) (construing evidence in favor of the plaintiff where "the video [of the incident] is ambiguous on the matter").

contested" by Mr. Buress's evidence. *Skop*, 485 F.3d at 1140. Contrary to Officer

Verne's account, for example, Mr. Buress's evidence shows that he "did not

threaten Verne or physically interfere with Verne"; instead, Mr. Buress "allow[ed]

himself to be handcuffed." Doc. 165 at 3, 8-9; *see Mowell v. City of Milton*, 810 F.

App'x 799, 805-06 (11th Cir. 2020) (denying qualified immunity based on the

facts described in the plaintiff's testimony). Officer Verne's attempt to justify his

actions based on his version of the facts violates "the clear dictates of [this Court's]

summary judgment law." *Skop*, 485 F.3d at 1140; *see also Hardigree v. Lofton*,

992 F.3d 1216, 1223 (11th Cir. 2021).

> ii.     *Officer Verne Violated Clearly Established Law By Arresting Mr. Buress For Making A Joke.*

When the evidence is properly construed in Mr. Buress's favor, Officer

Verne arrested Mr. Buress for "standing on the sidewalk, exercising his First

Amendment rights." *Toole v. City of Atlanta*, 798 F. App'x 381, 386 (11th Cir.

2019); *see* Doc. 165 at 8 (finding that Mr. Buress "insulted Officer Verne,

including with profanities," in a "joking, light-hearted tone"). Under those

circumstances, "[n]o reasonable officer could have believed that there was

probable cause to arrest." *Toole*, 798 F. App'x at 387.

By 2017, it was clear that officers cannot arrest people for speech criticizing

police officers, whether seriously or in jest. *See, e.g.*, *Merenda v. Tabor*, 506 F.

App'x 862, 866-67 (11th Cir. 2013) (no arguable probable cause to arrest someone

for calling an officer a "fucking asshole"); *Carr v. Cadeau*, 658 F. App'x 485 (11th Cir. 2016) (denying qualified immunity because "the First Amendment very clearly protects the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest" (cleaned up)); *State v. Saunders*, 339 So. 2d 641, 644 (Fla. 1976) (holding that the disorderly conduct statute "should not be read to proscribe the use of language *in any fashion whatsoever*" (emphasis added)). In *Gonzales v. City of Belle Glade*, 287 So. 2d 669 (Fla. 1973), for example, the Florida Supreme Court reversed convictions under the disorderly conduct statute that were based on the defendants' critical "comments to police officers," including "an intemperate expletive or two." *Id.* at 670. The court explained that, like Mr. Buress, the individuals never touched or physically threatened an officer. *Id.* The court held that speaking out, even if "annoying" to officers, is not a crime. *Id.*; *see also Olson v. Stewart*, 737 F. App'x 478, 483 (11th Cir. 2018) ("Florida courts have addressed suspects who far more aggressively challenged police" and "found those suspects did not engage in obstruction or disorderly conduct.").

Under this well-established law, Officer Verne lacked arguable probable cause. *See Alston*, 954 F.3d at 1319 ("[B]y 2011, it was clearly established that words alone cannot support probable cause for disorderly conduct—including profanity regarding police officers."). Like the speech in *Gonzales*, Mr. Buress's

speech may have been annoying to Officer Verne, but it was clearly not a lawful basis for an arrest. *See McDonough*, 2024 WL 106093, at *10 (finding that "swearing at [an officer], flipping him the bird, and allegedly grabbing [the plaintiff's] crotch in the presence of a handful of peaceful onlookers" did not even come close to disorderly conduct).

### B. Officer Verne's New Claim Of Bribery And Unlawful Compensation Is Baseless.

Because both of Officer Verne's original charges are plainly invalid, he concocted a new justification for his actions during this litigation: that Mr. Buress committed bribery and unlawful compensation for official behavior when he asked Officer Verne to help call him an Uber. *See* Br. for Appellant 12-21. That claim is entirely baseless. Both crimes occur only when money is offered in order to influence an official act. Calling an Uber is not an official act, and Mr. Buress did not offer Officer Verne money in order to influence him. Mr. Buress was simply trying to cover the cost of an Uber to take him back to his hotel.

#### i. *Officer Verne Lacked Arguable Probable Cause Because Calling An Uber Is Not An Official Act.*

Florida law provides that both bribery and unlawful compensation must be based on an official act, *i.e.*, an "act or omission which the person believes to have been, or the public servant represents as having been, either within the official discretion of the public servant, in violation of a public duty, or in performance of

a public duty." Fla. Stat. § 838.016(1); *see* Fla. Stat. § 838.015(1). In other words, an act must be "requested of a public servant *in his or her official capacity as such servant*." 16B Fla. Jur. 2d Criminal Law § 1638 (emphasis added); *see Raines v. State*, 65 So. 2d 558, 560 (Fla. 1953) (describing as "well settled" the rule that bribery cannot concern "an act that is entirely outside the scope of [the official's] legal duties"); *Nell v. State*, 277 So. 2d 1, 6 (Fla. 1973) (reiterating that "the action sought to be influenced must be within the official duties of the official").[7]

The district court's decision was far from "the first case interpreting Florida's bribery and unlawful compensation statutes in this fashion." Br. for Appellant 18. For example, in *State v. Castillo*, 877 So. 2d 690 (Fla. 2004), an officer was convicted of bribery for "accepting an unauthorized benefit . . . in exchange for his exercising his discretion not to issue a traffic citation." *Id.* at 697. The court explained that public officials cannot seek or accept "unauthorized benefits in return for performance or nonperformance of *official duties*." *Id.* at 691; *see also* Fla. Stat. § 112.313(2) (prohibiting officials from receiving things of value

---

[7] Officer Verne claims that cases like *Raines* are not applicable because they were decided prior to 1974, when Florida's modern criminal statutes were enacted. *See* Br. for Appellant 13-14. But the codification in 1974 had no effect on the official act requirement, which continues to apply. *See, e.g.*, *Bott v. State*, 492 So. 2d 722, 723 (Fla. Dist. Ct. App. 1986) (requiring "the act or omission sought to be influenced be in the official capacity of the public servant"); *Ellison v. State*, 132 So. 3d 291, 292 (Fla. Dist. Act. App. 2014) (prohibiting benefits "for the purpose of influencing such public servant in the performance of his duties").

to influence a "vote, official action or judgment of the public officer"); Fla. Stat. § 112.313(4) (prohibiting officials from accepting benefits to influence acts in their "official capacity"). Because issuing traffic citations is within the scope of an officer's "official duties," it qualified as an official act. *Castillo*, 877 So. 2d at 691.

As the district court correctly recognized, calling an Uber is not an official act. Doc. 165 at 6-7. Police officers' duties include investigating crimes and making arrests with probable cause. *See Castillo*, 877 So. 2d at 691; *see also* Fla. Stat. § 943.10(1) (defining a "law enforcement officer" as an official "whose primary responsibility is the prevention and detection of crime or the enforcement of the penal, criminal, traffic, or highway laws"). By Officer Verne's own admission, his role as a police officer in 2017 was to respond to "crime stopper tips" and "narcotic complaints," as well as "traffic enforcement." Doc. 119-2 at 13-14. Calling an Uber was not part of his official duties.

In response, Officer Verne ignores cases like *Raines*, *Nell*, and *Castillo*, and insists that bribery and unlawful compensation can be based on "*any* act." Br. for Appellant 14-15 (quoting *State v. Lopez*, 522 So. 2d 997, 998 (Fla. Dist. Ct. App. 1988)). But every decision that Officer Verne cites concerned payments for official acts. *See Bias v. State*, 118 So. 2d 63, 64 (Fla. Dist. Ct. App. 1960) ("The act of releasing these prisoners was official conduct."); *State v. Saad*, 429 So. 2d 757, 758 (Fla. Dist. Ct. App. 1983) (bribe offered to officers for release of cash seized

during arrest that defendant claimed he was legally entitled to); *State v. Gonzalez*, 528 So. 2d 1356, 1356 (Fla. Dist. Ct. App. 1988) (bribe taken for act the official was "legally bound" to perform). For example, in *Lopez*, the defendant thought he was bribing a building inspector to perform building inspections. 522 So. 2d at 998. The court held that it was no defense that an inspector would have been required by law to perform such inspections regardless of the bribe. *Id.* Because the payment was "intended to influence [the inspector's] work habits" in the course of his official duties, the defendant was guilty. *Id.*

It was in this context that the *Lopez* court said that "the bribery statute prohibits any payment intended to influence the performance of *any* act by a public servant." *Id.* Officer Verne tries to take this statement out of context by quoting only the phrase "*any* act," but the court was explicit that bribery concerns "any act *by a public servant*," *i.e.*, in his capacity as a public servant. *Id.* (emphasis added).

Officer Verne also argues for the first time that calling an Uber *was* an official act because he would have to "take time away" from his official duties to help Mr. Buress. Br. for Appellant 16. As an initial matter, Officer Verne waived this argument because he failed to raise it below. *See* Doc. 165 at 7 (noting Officer Verne made no "serious attempt" to explain how "calling an Uber is within the scope of a police officer's official duties"); *see* Doc. 121 at 9-11 (arguing only that bribery applies to "*any* act regardless if the individual believes the act is one an

officer is required to perform in his official capacity"). This Court has "repeatedly held that an issue not raised in the district court . . . will not be considered by this court," including arguments in favor of qualified immunity. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (cleaned up); *see WBY, Inc. v. DeKalb Cnty.*, 695 F. App'x 486, 492 (11th Cir. 2017) ("Since Rutland did not 'specifically and clearly' articulate his current theory of qualified immunity to the district court at an appropriate time, we will not address its merits on appeal.").[8]

In addition, Officer Verne is incorrect. If doing something *not* within an officer's duties constitutes an official act simply because it takes time away from the officer's actual duties, then *every act* would constitute an official act. To the contrary, Florida courts have repeatedly made clear that an official act must itself "touch[] on his duties" in an official capacity. *Shields v. Smith*, 404 So. 2d 1106, 1111-12 (Fla. Dist. Ct. App. 1981); *see Bateman v. State*, 240 So. 3d 36, 39 (Fla. Dist. Ct. App. 2017) (explaining that an official act is an "act . . . within his or her

---

[8] Officer Verne suggests that the district court "placed the burden of showing clearly established law on Verne." Br. for Appellant 18. Not so. The district court expressly recognized that it was Mr. Buress's burden to demonstrate that "sufficient facts are in dispute as to whether Officer Verne even had *arguable* probable cause," and the court cited cases like *Raines* that Mr. Buress put forward. Doc. 165 at 6-7. The district court was simply noting that Officer Verne had failed to make any "serious attempt" to dispute Mr. Buress's showing. *Id.* at 7.

official authority to accomplish"). Calling an Uber did not touch on Officer Verne's official duties. Doc. 165 at 7.[9]

Finally, Officer Verne makes the remarkable argument that he could have arguable probable cause even if it was not reasonable to believe that the official act requirement was met. *See* Br. for Appellant 15-16. In other words, he claims that the official act requirement can be ignored because "two out of three" elements "is close enough." *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013).

This Court has specifically rejected that argument. *See id.* Probable cause requires "a reasonable belief that the suspect *had committed or was committing a crime*." *Skop*, 485 F.3d at 1137 (emphasis added). Thus, "[w]hether an arresting officer possesses probable cause or arguable probable cause naturally depends on the *elements of the alleged crime*." *Id.* (emphasis added). If no reasonable officer would believe that an element of the crime was satisfied, qualified immunity must be denied. *See Wilkerson*, 736 F.3d at 978; *see also Henley v. Millsap*, No. 21-12231, 2022 WL 3654846, at *2 (11th Cir. Aug. 25, 2022) (reiterating that

---

[9] Officer Verne cites several police department orders, but fails to identify any authority that those orders are relevant to interpreting the Florida bribery and unlawful compensation statutes. Br. for Appellant 16-17 & n.3. Nor do those orders help Officer Verne, as they too prohibit officers from "[a]ccepting bribes, money, or other valuables, *while acting in the capacity of a police officer*." Miami Police Dep't, Order 11.6.17.20 (March 8, 2022) (emphasis added).

qualified immunity "does not shield officers who *unreasonably* conclude that probable cause exists").[10]

        ii.      *Officer Verne Lacked Arguable Probable Cause Because Mr. Buress Offered $20 To Pay For An Uber, Not Influence Officer Verne.*

Officer Verne also lacked arguable probable cause for an additional, independent reason: Mr. Buress never offered money in order to influence Officer Verne. Both the bribery and unlawful compensation statutes require that the official be offered a "pecuniary or benefit not authorized by law" in order to influence him. Fla. Stat. § 838.016(1); *see* Fla. Stat. § 838.015(1). A "benefit" is defined as a "gain or advantage, or anything regarded by the person to be benefited as a gain or advantage," such as a "gift" or "gratuity." Fla. Stat. § 838.014(1).

As would have been obvious to any reasonable official, Mr. Buress offered $20 not as a gift to Officer Verne, but to cover the cost of an Uber. Mr. Buress's phone had run out of battery, and therefore he needed someone else to use their phone to call an Uber. As Officer Verne admitted, "[b]y asking me to call him an

---

[10] Officer Verne misinterprets the statement from *Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010), that "[s]howing arguable probable cause does not . . . require proving every element of a crime." *Id.* at 1257 (citing *Scarbrough v. Myles*, 245 F.3d 1299, 1302-03 (11th Cir. 2001)). That simply means that arguable probable cause does not require the same kind of *evidence* needed to prove a crime at trial. *See Scarbrough*, 245 F.3d at 1302-03 (rejecting requirement that officers "obtain a confession before making an arrest"). This Court has never held that officers can ignore elements of crimes entirely. *See Wilkerson*, 736 F.3d at 978-79.

Uber it was obvious that he did not have a usable cell phone." Doc. 51-1 at 3. To avoid any concern that Officer Verne would be paying for the Uber, Mr. Buress offered $20 upfront to ensure that Officer Verne would be made whole when his Uber account was charged.[11]

That is not bribery or unlawful compensation. When a person asks for help purchasing something and provides the money needed, the person is simply covering the cost of the purchase. A government employee does not commit bribery, for example, by asking her colleague to pick up a coffee and handing over a $5 bill.

Officer Verne appears to concede that it is perfectly lawful to ask someone for help making a purchase or calling an Uber. *See* Br. for Appellant 20 ("True, Verne could have called an Uber for [Mr. Buress]."). But in Officer Verne's view, the moment Mr. Buress tried to provide money to pay for the Uber, he committed a crime. *Id.*

That does not make sense, and that is not what Officer Verne thought on December 9, 2017. In sworn testimony, Officer Verne admitted that, after Mr.

---

[11] Officer Verne incorrectly asserts that "the parties do not dispute the relevant facts" underlying his claim of bribery and unlawful compensation. Br. for Appellant 13. The parties agree about what Mr. Buress *said*: "call me an Uber and I'll give you $20." *See* Doc. 165 at 7. But Mr. Buress disputes Officer Verne's claim that Mr. Buress's *intent* in making that statement was to enrich Officer Verne in order to influence an official act, rather than simply to pay for an Uber. *See, e.g.*, Doc. 119-1 at 138.

Buress asked for help calling an Uber, Officer Verne did not think there was a basis to arrest Mr. Buress, and so he did not arrest Mr. Buress then. *See* Doc. 119-2 at 138-39 (explaining that he did not turn on his body-worn camera at that point because he "didn't think it was going to lead up to an arrest"). Only later, after following Mr. Buress into the bar, out of the bar, and back to the street corner, where Mr. Buress called Officer Verne "stupid as fuck," did Officer Verne make an arrest. BWC Video at 0:47-1:10. During the arrest, Officer Verne never mentioned bribery or unlawful compensation, nor did he include either charge in his arrest report. *See id.*; Doc. 119-2 at 215; Doc. 136-2. And he never once asserted either crime during his deposition, even when asked directly about the basis for the arrest. *See* Doc. 119-2 at 165. His effort during litigation to justify the arrest using such an outlandish claim should be denied. *See Grider v. City of Auburn*, 618 F.3d 1240, 1258 (11th Cir. 2010) (denying qualified immunity where the officer "knew no bribery occurred" and "fabricated the bribery" charge anyway).

### C. Officer Verne's Attempt To Bootstrap A Resisting Arrest Charge Also Fails.

Finally, Officer Verne attempts to bootstrap a legal basis for his unlawful arrest by claiming that Mr. Buress *resisted* the arrest. Br. for Appellant 26-40. But under Florida law, resisting an officer without violence requires proof that (1) the officer was engaging "in the lawful execution of any legal duty," and (2) that Mr.

Buress "resist[ed], obstruct[ed], or oppose[d]" the officer. Fla. Stat. § 843.02.

Officer Verne lacked arguable probable cause for both elements.

> i.  *Officer Verne Was Not Lawfully Executing A Duty By Arresting Mr. Buress Without Probable Cause.*

In Florida, "the law is well settled that the legality of an arrest is an element of the offense of resisting arrest without violence." *State v. Espinosa*, 686 So. 2d 1345, 1347 (Fla. 1996); *see, e.g.*, *Smith v. State*, 546 So. 2d 459, 460 (Fla. Dist. Ct. App. 1989). Accordingly, where, as here, "an arrest is not lawful, then a defendant cannot be guilty of resisting it." *Jay v. State*, 731 So. 2d 774, 775 (Fla. 1999).

As discussed above, Officer Verne did not have arguable probable cause to arrest Mr. Buress for any crime. As a result, Officer Verne lacked arguable probable cause for resisting arrest because he was not engaged "in the lawful execution of any legal duty." Fla. Stat. § 843.02.

Officer Verne does not dispute this well-established rule. Instead, Officer Verne tries yet another revisionist twist, claiming that he was not arresting Mr. Buress at all, but rather engaging in an investigative stop "under a reasonable suspicion standard." Br. for Appellant 39. That is a complete flip-flop from what Officer Verne told the district court in his sworn statement: "I arrested Mr. Buress." Doc. 51-1 at 3.

This Court has made clear that officers cannot simply recharacterize an arrest as an investigatory stop when probable cause is lacking. *See Windsor v.*

*Eaves*, 614 F. App'x 406, 409-10 (11th Cir. 2015) (rejecting similar argument).

Rather, an investigatory stop is a specific type of limited detention used "to give

the police an opportunity to engage in brief and nonintrusive investigation

techniques, such as noncustodial questioning." *United States v. Acosta*, 363 F.3d

1141, 1146 (11th Cir. 2004). In *Windsor*, for example, several officers arrested the

plaintiff without probable cause, and later attempted to recast their actions as an

investigatory stop. 614 F. App'x at 409-10. This Court rejected their attempt based

on a number of factors that showed that the officers were, in fact, making an arrest.

*Id.* Among other things, the officers testified that they believed they were

conducting an arrest; the officers never asked the plaintiff any investigative

questions during the arrest; and the officers handcuffed the plaintiff within seconds

of the arrest. *Id.* at 410. Under those circumstances, "no reasonable officer . . .

could have believed that what they did was a valid *Terry* stop." *Id.*

As in *Windsor*, no reasonable officer could have believed that Officer Verne

was making an investigatory stop. For starters, Officer Verne himself repeatedly

stated that he was making an arrest. In his deposition, Officer Verne testified that

he "decided to arrest Mr. Buress." Doc. 119-2 at 160-61, 177-78 (Q: "Instead you

arrested him; correct?" A: "Yes."); *see also id.* at 210, 213-14 (Officer Verne

distinguishing an arrest from a detention, and confirming that this was an arrest). In

doing so, Officer Verne told Mr. Buress to put his hands behind his back—

standard language for an arrest. BWC Video at 0:50-1:11; *see, e.g.*, *McKinnon v. State*, 17 So. 3d 860, 861 (Fla. Dist. Ct. App. 2009) (finding an intent to arrest based on telling the person "to place his hands behind his back"). Officer Verne then signed a sworn "Complaint/Arrest Affidavit," in which he stated: "Defendant arrested." Doc. 136-2 at 2-3.

Moreover, Officer Verne handcuffed Mr. Buress—another hallmark sign of arrest—within seconds of being called "stupid as fuck." BWC Video at 0:50-1:11; *see Kyser v. State*, 533 So. 2d 285, 287 (Fla. 1988) (noting key signs of arrest include handcuffing "or otherwise restrain[ing]"); *Griggs v. State*, 994 So. 2d 1198, 1201 (Fla. Dist. Ct. App. 2008) (finding officers "undoubtedly communicated their intention to effect an arrest" by handcuffing). During his deposition, Officer Verne himself defined an arrest as "[w]hen you handcuff somebody and you detain them or arrest them." Doc. 119-2 at 24. And he conceded that he handcuffed Mr. Buress in order to effect an arrest. *Id.* at 214 (Q: "Handcuffs were on him. He was going to get transported. This was an arrest, you would agree; correct?" A: "Yes.").[12]

_____

[12] Officer Verne now argues that handcuffing can occur in certain circumstances during an investigatory stop. *See* Br. for Appellant 31. But that is true only if handcuffing is reasonably necessary for the police "to protect themselves during these encounters, or to maintain the status quo." *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985); *see Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1305-06 (11th Cir. 2006) (permitting handcuffing "when the officer reasonably believes that the detainee presents a potential threat to safety"). Officer

Finally, Officer Verne was not investigating any crime. Like the officers in *Windsor*, Officer Verne never asked Mr. Buress any investigative questions throughout the arrest. Instead, Officer Verne repeatedly stalled for time while thinking of a charge he could use to justify the arrest he had already started. *See, e.g.*, BWC Video at 0:59-1:01 ("I'll let you know."); *id.* at 1:27-1:29 ("You'll find out in a little bit."); *id.* at 2:10-2:11 ("You'll find out, I'm going to put it in writing."). Officer Verne eventually told Mr. Buress that he had been arrested for "trespassing" and "disorderly intox." BWC Video at 5:09-5:13. Under these circumstances, "no reasonable officer . . . could have believed that what [Officer Verne] did was a valid *Terry* stop." *Windsor*, 614 F. App'x at 410.

Even if this had been an investigatory stop, moreover, Officer Verne lacked reasonable suspicion for any crime. Although a lower standard than probable cause, reasonable suspicion still requires "an objectively reasonable suspicion that the individual had engaged in, or was about to engage, in a crime." *Roberts v. Kahl*, 844 F. App'x 160, 163 (11th Cir. 2021) (quoting *Acosta*, 363 F.3d at 1145) (cleaned up). Officer Verne points to the same crimes for which he claims probable cause. *See* Br. for Appellant 32. As explained above, no reasonable officer would

---

Verne fails to make any argument that Mr. Buress posed a threat to his safety, nor could he. *See* Br. for Appellant 31; *see* Doc. 119-2 at 136, 140-41, 148-49, 153 (Officer Verne testifying repeatedly that Mr. Buress was not "endangering anyone").

believe any of those crime had been committed.[13] Accordingly, qualified immunity must be denied. *See Jessup v. Miami-Dade Cnty.*, 440 F. App'x 689, 693-94 (11th Cir. 2011) (denying qualified immunity where officers lacked reasonable suspicion prior to arrest); *Jackson v. Sauls*, 206 F.3d 1156, 1166 (11th Cir. 2000) (denying qualified immunity because "[i]f a jury were to credit Plaintiffs' evidence, then Defendants had no basis for their actions").

ii.    *Mr. Buress Did Not Resist Officer Verne's Unlawful Arrest.*

Officer Verne's resisting arrest argument also fails because Mr. Buress never resisted the arrest, lawful or not. Resistance normally requires "obstructive conduct" that interferes with an officer's execution of lawful duties. *D.G. v. State*, 661 So. 2d 75, 76 (Fla. Dist. Ct. App. 1995); *see W.W. v. State*, 993 So. 2d 1182, 1186 (Fla. Dist. Ct. App. 2008) (finding "appellant did not physically impede the deputy's investigation"); *Ford v. City of Boynton Beach*, 323 So. 3d 215, 225-26 (Fla. Dist. Ct. App. 2021) (Warner, J., concurring). As the district court found, Mr.

---

[13] Officer Verne incorrectly suggests that he could have reasonable suspicion without actually believing a crime had been committed. *See* Br. for Appellant 32. Although reasonable suspicion may be based on observations of legal activity, it still requires "objective facts that the person has engaged in, or is about to engage in, criminal activity." *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007); *see Morris v. Town of Lexington*, 748 F.3d 1316, 1324 (11th Cir. 2014) ("Reasonable suspicion of what? And precisely when did they have it? [The officers] do not say.").

Buress never resisted; he "allow[ed] himself to be handcuffed" and stood "still without requiring restraint." Doc. 165 at 3; BWC Video at 1:01-1:11.

As he does throughout his brief, Officer Verne responds by disputing the district court's assessment of the factual record. He insists, for example, that the district court "omitted" reference "to Buress taking ten (10) steps away from Verne after being instructed to position his hands for handcuffing." Br. for Appellant 28. But the district court made no error: Mr. Buress stepped back initially because Officer Verne told him to "get out of here." BWC Video at 0:50-0:54. As Officer Verne himself admitted, Mr. Buress was "complying with [Officer Verne's] command to get away, to get out of here." Doc. 119-2 at 175. Less than two seconds later, Officer Verne changed his mind and ordered Mr. Buress to put his hands behind his back, stepping towards Mr. Buress and grabbing his arm. BWC Video at 0:54-1:04. Mr. Buress complied, "ask[ing] Officer Verne why he was under arrest, but also allow[ing] himself to be handcuffed and stand[ing] still without requiring restraint." Doc. 165 at 3; *see* Doc. 137 ¶¶ 25-26 ("[A]s soon as Verne touched [Mr. Buress's] arm, [Mr. Buress] immediately complied, turned around, and put his hands behind his back.").

Next, Officer Verne claims that the district court omitted any reference to Mr. Buress "engaging with three (3) individuals" while being handcuffed. Br. for Appellant 28. Again, the district court did not overlook anything. Mr. Buress's

brief greeting and gesture had no effect on Officer Verne's ability to handcuff both of Mr. Buress's hands and make the arrest. *See* BWC Video at 1:15-1:22. No reasonable officer would think that Mr. Buress was resisting arrest by saying hello or raising his hand briefly. *See Powell v. Haddock*, 366 F. App'x 29, 30-31 (11th Cir. 2010) (no arguable probable cause to arrest where the plaintiff "took a few steps away" and "raised her hands about shoulder height"); *D.A.W. v. State*, 945 So. 2d 624, 626 (Fla. Dist. Ct. App. 2006) (finding "[t]he officer was not forced to interrupt the arrest process" by the defendant's words, and noting that "words alone can rarely, if ever, rise to the level of an obstruction").

Officer Verne erroneously claims that *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), established that simply raising one's hands constitutes resisting arrest. *See* Br. for Appellant 34. In fact, this Court made no mention of that act in discussing arguable probable cause. *See Post*, 7 F.3d at 1559; *see also id.* at 1556 (noting that the plaintiff's evidence showed that he was raising his hands "to be handcuffed"). Rather, the Court relied on the "*undisputed* evidence" that the plaintiff had previously resisted arrest with violence, and concluded that his open "defiance of a police instruction" indicated that he was "interfering or about to interfere with" a lawful investigation. *Id.* at 1559 (emphasis added). No such evidence is present here—indeed, Mr. Buress's evidence shows

that he complied with Officer Verne's orders leading up to and during the arrest. *See* Doc. 165 at 9.

Finally, Officer Verne argues that the district court overlooked "whether Buress *refused* to be placed in a police vehicle." Br. for Appellant 29. But it was *Officer Verne* who failed to argue below that any events at the police car—well after he handcuffed Mr. Buress—were relevant. *See* Doc. 121 at 15 (arguing only that Mr. Buress "backed away" and "used his right hand to engage with the three (3) individuals"); Doc. 147 at 4 (same). Officer Verne's attempt to raise this argument for the first time on appeal—while blaming the district court for his own omission—should be rejected as waived. *See WBY, Inc.*, 695 F. App'x at 492.[14] And in any event, Mr. Buress did not resist arrest by telling Officer Villegas that "he had not done anything and that the arrest lacked probable cause." *Buress*, 2022 WL 2161438, at *3; BWC Video at 5:53-6:03; *see Powell*, 366 F. App'x at 31 (finding no arguable probable cause where an individual raised her hands and challenged the police verbally); *Edger v. McCabe*, 84 F.4th 1230, 1237-38 (11th Cir. 2023) (finding no arguable probable cause for obstruction where an individual was "clearly frustrated and gesturing" as he spoke with police officers).

---

[14] Officer Verne falsely asserts that Mr. Buress's statement of material facts did not dispute Officer Verne's claim that Mr. Buress "resisted his handcuffing and resisted his placement into a police vehicle." Br. for Appellant 29. Mr. Buress did so explicitly. *See* Doc. 137 ¶ 27 ("Disputed that Plaintiff resisted."), ¶ 32 ("Disputed.").

**II.     Officer Verne Violated Mr. Buress's Clearly Established First Amendment Rights By Arresting Him In Retaliation For Making Fun Of Officer Verne.**

Officer Verne also violated Mr. Buress's clearly established First Amendment rights by arresting him in retaliation for protected speech. This Court has repeatedly recognized that "officials may not retaliate against private citizens because of the exercise of their First Amendment rights," including by arresting people "on trumped-up" charges. *Bennett*, 423 F.3d at 1249, 1255-56. Officer Verne did exactly that.

**A.     A Reasonable Jury Could Find That Officer Verne Arrested Mr. Buress Because He Made Fun Of Officer Verne.**

To establish his First Amendment retaliation claim, Mr. Buress must show (1) that his speech was constitutionally protected, (2) that Officer Verne took an adverse action against Mr. Buress, and (3) that "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Id.* at 1250. Before the district court, Officer Verne conceded the first two elements. *See* Doc. 121; Doc. 138 at 16 ("Defendants do not contest the first two elements, and indeed they are satisfied here."); Doc. 147. As for causation, the district court correctly found that a reasonable jury could conclude that Officer Verne was motivated by his desire to retaliate against Mr. Buress. Doc. 165 at 10. As Officer Verne admitted, he was "just salty" about being called "stupid as fuck." *Buress*, 2022 WL 2161438, at *1, *3.

On appeal, Officer Verne argues for the first time that Mr. Buress's speech was *not* protected because Mr. Buress "started with offering a police officer money in exchange for a favor." Br. for Appellant 43. That argument fails on multiple levels. First, it was not raised below, and thus is waived. *See* Doc. 121 at 13 (Officer Verne arguing the opposite: "Granted, Plaintiff's profanity that evening arguably *started* as protected speech."). Second, it starts from a false premise: Mr. Buress did not attempt to bribe Officer Verne, as discussed above. *See supra* § I.B. And finally, it draws an incorrect legal conclusion: Even if Mr. Buress's request for help calling an Uber were not protected, that does not mean that "the rest of [Mr. Buress's] statements are not protected speech either." Br. for Appellant 43. Mr. Buress did not lose First Amendment protection for the rest of the night. And Officer Verne makes no argument that calling him "stupid as fuck" was not protected First Amendment speech, nor could he. *See, e.g.*, *L.A.T. v. State*, 650 So. 2d 214, 216-18 (Fla. Dist. Ct. App. 1995) (finding an individual's "well and ill chosen words" directed at the police were "constitutionally protected" even with "obscenities").

Next, Officer Verne raises another argument he did not present to the district court, claiming that Mr. Buress cannot establish causation "[b]ecause there were several reasons to arrest Buress" "based on his non-protected speech," resistance, "and other aspects of his demeanor and tone while plainly inebriated." Br. for

Appellant 44. The only argument Officer Verne made below was that he had probable cause. *See* Doc. 121 at 17-18. He never argued that Mr. Buress's evidence that Officer Verne made the arrest "for a retaliatory purpose" was insufficient. *Buress*, 2022 WL 2161438, at *3. Thus, the argument is waived.

Even if it were proper to consider Officer Verne's new argument, it is incorrect. To establish causation, Mr. Buress must show "that the retaliation was a substantial or motivating factor behind the arrest." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1296 (11th Cir. 2019). A reasonable jury could find exactly that. Officer Verne admitted that he arrested Mr. Buress "for a retaliatory purpose." *Buress*, 2022 WL 2161438, at *3; *see also* Doc. 119-2 at 185 (Q: "When Mr. Buress decided . . . [to] call you stupid as fuck, that's when you decided to arrest him; correct?" A: "Yes."); *id.* at 138-39 (explaining that, earlier, Officer Verne "didn't think it was going to lead up to an arrest"). The body-worn camera video confirms this, showing Officer Verne arresting Mr. Buress in response to being called "stupid as fuck." *See* BWC Video at 0:47-0:54. Under these circumstances, a reasonable jury could find that Officer Verne was motivated by retaliation. *See Merenda*, 506 F. App'x at 868 ("There is a clear causal connection

between that protected speech and the arrest because [Officer] Tabor testified that he arrested Merenda 'because he used profanity.'").[15]

**B. No Reasonable Officer Would Arrest Mr. Buress For Making A Joke.**

By arresting Mr. Buress for calling Officer Verne "stupid as fuck," Officer Verne violated clearly established law. This Court has long recognized that the First Amendment protects "verbal criticism and challenge directed at police officers," even when they involve profanity. *Duncan v. City of Sandy Springs*, No. 20-13867, 2023 WL 3862579, at *6 (11th Cir. June 7, 2023); *see Merenda*, 506 F. App'x at 864, 868 (denying qualified immunity for retaliatory arrest where the plaintiff told the officer, "You're a fucking asshole"). Because a reasonable jury could find that Officer Verne arrested Mr. Buress for that kind of protected speech, qualified immunity must be denied.

On appeal, Officer Verne again offers no argument that he is entitled to qualified immunity under Mr. Buress's version of the facts. *See* Br. for Appellant 40 (conceding that "government officials may not subject 'an individual

---

[15] Because Officer Verne did not have arguable probable cause, Mr. Buress does not need to rely on *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019), which held that a plaintiff can prevail even if the arresting officer *had* probable cause if the plaintiff can demonstrate that otherwise similarly situated individuals were not arrested. *Id.* at 1727. In any event, under *Nieves*, Mr. Buress's evidence shows that there were numerous people drinking and walking around in Wynwood during Art Basel, but Officer Verne targeted Mr. Buress because he called Officer Verne "stupid as fuck." *See* Doc. 138 at 17 n.7; BWC Video.

to retaliatory actions for engaging in protected speech'"). Instead, Officer Verne claims that the district court did not "identify clearly established law that would make a $20 offer to an individual acting as a police officer protected speech." Br. for Appellee 45. But again, it was *Officer Verne* who failed to raise this argument before the district court. *See* Doc. 121 at 17-18. Even if he had, it is irrelevant: A reasonable jury could find that Officer Verne arrested Mr. Buress because he called Officer Verne "stupid as fuck"—speech which is plainly protected—and not because he asked Officer Verne for help calling an Uber. An arrest based on a harmless joke is plainly unlawful. *See, e.g.*, *Bennett*, 423 F.3d at 1255; *Carr*, 658 F. App'x at 490.

## III. Officer Verne Is Not Entitled To State-Law Immunity Because A Reasonable Jury Could Find That He Acted With Malice.

As the district court recognized, Officer Verne is not entitled to state-law immunity because a reasonable jury could find that he acted with malice. Doc. 165 at 11. Under Florida law, malice can be inferred from the lack of probable cause alone. *See Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002) ("[L]egal malice is sufficient and may be inferred from, among other things, a lack of probable cause."). Officer Verne has no response this well-settled rule. *See* Br. for Appellant 46-48. Any such response is therefore waived. *See, e.g., Rankin v. Celebrity Cruises, Ltd.*, 489 F. App'x 362, 363 n.1 (11th Cir. 2012). And that, alone, resolves this issue.

On top of the lack of probable cause, a reasonable jury could find that Officer Verne acted with malice because he falsified the contents of his arrest affidavit and misrepresented facts to the prosecutor. *See* Doc. 165 at 11-12 (citing Officer Verne's "potentially willful fabrication of evidence"); *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994) (finding triable issue of malice based on "intentionally provid[ing] false information to authorities"); *see also supra* at 13 n.4. In response, Officer Verne claims that the State Attorney's Office did not contradict his arrest report because the Office was operating under the beyond-a-reasonable-doubt standard. Br. for Appellant 46-47. The standard of proof makes no difference, however, because the State Attorney's Office was definitive that "[a]t no point during the body worn camera footage is the Defendant observed entering roadways, defacing property or injuring another." Doc. 136-5 at 3. Similarly, the district court found that "[t]he body-worn camera footage also supports" Mr. Buress's evidence that he did not cause any public disturbance. Doc. 165 at 8. And Mr. Buress has consistently "maintain[ed] that he used a joking, light-hearted tone and did not threaten Verne or physically interfere with Verne." *Id.* In short, regardless of the standard of proof, a reasonable jury could find that Officer Verne gave a "willfully fabricated version of events." *Id.* at 11.

Finally, in perhaps his most egregious attempt to draw factual inferences in his own favor, Officer Verne suggests that he *voluntarily* dropped the trespass

charge in good faith. Br. for Appellant 47. The evidence shows the opposite:

Officer Verne tried to use the trespass charge to justify his actions, but was forced

to drop it by his supervisor. Doc. 136-4 at 85-86. Furthermore, despite this direct

order, Officer Verne told the prosecutor that he *did* have authority to charge Mr.

Buress with trespass. *See* Doc. 136-3. During litigation, Officer Verne also falsely

claimed that he "had been advised that MPD had been authorized to arrest those

who trespassed on this venue." Doc. 51-1 at 3; *see also* Br. for Appellant 5. In fact,

as Officer Verne admitted under oath, he had not been authorized to make a

trespass arrest at the venue, either by a manager on the premises or through a

"trespass affidavit." *See* Doc. 119-2 at 217-18. Nor was he ever advised that he

was authorized to make arrests for trespass at the bar. *See id.* at 146 (Officer Verne

conceding that he did not know "if [he] had the authority" to enforce the trespass

laws at the bar).

Accordingly, far from demonstrating his good faith, Officer Verne's attempt

to bring a baseless trespass charge—based on a fabricated and changing

narrative—further demonstrates that he acted with malice. *See Yancey v. Tillman*,

No. 22-10867, 2022 WL 5071153, at *4 (11th Cir. Oct. 5, 2022) (finding malice

based on "lying about the circumstances to fabricate charges"); *Williams v. Miami-

Dade Police Dep't*, 297 F. App'x 941, 948-49 (11th Cir. 2008) (citing "a dispute in

the record regarding the legitimacy of the evidence that formed the basis of the prosecution").

*    *    *

As the district court properly found, a reasonable jury could conclude that Officer Verne took personal offense at a joke and arrested Mr. Buress in retaliation. Officer Verne then attempted to cover up his misconduct by inventing a "willfully fabricated version of events." Doc. 165 at 11. Accepting the facts as viewed by the district court, Officer Verne violated clearly established law. Because Officer Verne's only response is to "contend[] that he is entitled to qualified immunity under *his* version of the facts," his appeal should be denied. *Stephens v. Lin*, 612 F. App'x 581, 582 n.2 (11th Cir. 2015).

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision.

Respectfully submitted,

Date: January 12, 2024

*/s/ Gregory Cui*
Gregory Cui
RODERICK AND SOLANGE
  MACARTHUR JUSTICE CENTER
501 H Street NE, Suite 275
Washington, D.C. 20002
(202) 869-3751
gregory.cui@macarthurjustice.org

Vanessa del Valle
Danielle Berkowsky
RODERICK AND SOLANGE
  MACARTHUR JUSTICE CENTER
160 East Grand Avenue
6th Floor
Chicago, IL 60611
(312) 503-1271

Sheila Bedi
NORTHWESTERN PRITZKER SCHOOL OF
  LAW
375 East Chicago Ave.
8th Floor
Chicago, IL 60611
(312) 503-2492

Faudlin Pierre
PIERRE SIMON
600 SW 4th Avenue
Fort Lauderdale, FL 33315
(305) 336-9193

*Counsel for Plaintiff-Appellee
Hannibal Buress*

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempted by Rule 32(f), this document contains 12,977 words.

This document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it was prepared in 14-point Times New Roman font.

Date: January 12, 2024

*/s/ Gregory Cui*
Gregory Cui

## CERTIFICATE OF SERVICE

I certify that on January 12, 2024, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.


Date: January 12, 2024                    /s/ Gregory Cui
                                          Gregory Cui